UNITED STATES of America, Plaintiff,

v.

TALCO CONTRACTORS, INC., Louis Bacchetta, Greenview Site Contractors, Inc., Ridge Hill Contractors, Inc., Autumn Developers, Inc., Ridge Lee Developers, Inc., Advanced Construction Contractors, Elmridge Associates, a general partnership, Michael Cavalcanti, John F. Kendall, Louis N. Bianchi, Mary Bacchetta, Marchetta Properties, Inc., Citibank (New York State), and National Loan Service Center, Inc., Defendants.

No. 93–CV–6389T.

United States District Court,
W.D. New York,

Jan. 18, 1994.

---

1. Dr. Tannin was the doctor who examined the plaintiff and made the recommendation that plaintiff return to work.

Steven Cole, New City, NY, for plaintiff.

Jules Epstein, Syosset, NY, Jack Battaglia, John R. Parrinello, Rochester, NY, for defendants.

## DECISION AND ORDER

FISHER, United States Magistrate Judge.

In this civil tax action brought pursuant to 26 U.S.C. §§ 7401 and 7403, the government seeks (1) to reduce to judgment assessments made against the defendants, including the individual defendant Louis Bacchetta, (2) a declaration that the federal tax liens pursuant to those assessments attached to the property of the defendants, including Bacchetta, (3) a judgment against the defendants, including Bacchetta, for the value of the property allegedly dissipated, encumbered or transferred by Bacchetta in breach of his fiduciary duties to the corporate defendants, (4) foreclosure of tax liens against certain identified properties, (5) a permanent injunction against Talco Contractors and Green View Site Contractors from making any payment to a labor supplier, and (6) a permanent injunction against Bacchetta from becoming a shareholder, officer, director or responsible individual in connection with any enterprise other than Talco Contractors and Green View Site Contractors. In essence, the government seeks a determination that Bacchetta and the corporate defendants "are alter-egos of each other, and therefore, each liable for debts of the others to the United States." Memorandum in Support of Motion in Limine, at 1.

The government noticed the deposition of Louis Bacchetta in his individual capacity, but the deposition was postponed when John Parrinello, Esq., requested an adjournment for the purpose of exploring the potential ethical ramifications of representing Bacchetta in his individual capacity. On October 19, 1993, the court ordered Bacchetta to appear for his deposition on November 3, 1993, at 10:00 a.m. at the offices of the United States Attorney in Rochester.

At the deposition, Bacchetta refused to answer questions on the ground that his answers might incriminate him. Bacchetta's counsel announced at the outset that, unless immunity was conferred on Bacchetta, "that it is his intent to assert the Fifth Amendment on each and every question that's asked of him individually." Deposition transcript, at 3. Bacchetta asserted the Fifth Amendment privilege in response to questions concerning where he lived, where he worked, what he did for a living, whether he met with anyone in preparation for the deposition, whether he was familiar with a company known as Talco Contractors, and whether he would answer any questions concerning his alleged signature on document exhibits. Counsel asked for more time to reconsider the decision to invoke the Fifth Amendment, and promised government counsel an answer by 3:00 p.m. on November 3, 1993, whether Bacchetta would testify. The government contends that government counsel waited until 3:41 p.m. without receiving an answer and that he thereupon departed Rochester to return to his Washington, D.C. office. Bacchetta's counsel avers that he contacted government counsel at 2:40 p.m., that he requested more time to undertake the legal research deemed necessary, and that he further requested that government counsel not depart for Washington without bringing the matter to the attention of the court. According to Bacchetta's counsel, government counsel simply departed to Washington without further communication.

The government then moved *in limine* for an order precluding (i.e., suppressing) the testimony of Louis Bacchetta on behalf of himself, and the corporate defendants. The government has styled this as a motion to preclude Bacchetta "from testifying in this proceeding, either individually, or as a designated representative of any corporation." Memorandum in Support of Motion in Limine, at 1. Bacchetta and the corporate defendants oppose the motion, and contend that the court should urge the government to seek immunity for Bacchetta, or in the alternative, "if it is inclined to preclude Mr. Bacchetta's testimony, to fashion a conditional preclusion order allowing Mr. Bacchetta to purge himself of said preclusion at any time prior to the conclusion of discovery and depositions in this case." Declaration of John R. Parrinello in Opposition to Plaintiff's Motion

in Limine, at ¶ 29. The corporate defendants also "request that the court enter an order conditioning Louis Bacchetta's testimony on Plaintiff granting him immunity from prosecution relating to any testimony given in the requested depositions; or in the alternative, the court enter a protective order prohibiting the use of Louis Bacchetta's deposition testimony, the transcript of that testimony, and any interrogatory answers in any criminal proceeding brought against him by the United States of America; or fashion a remedy under Rule 37 of the Federal Rules of Civil Procedure to accommodate Bacchetta's 5th Amendment concerns." Memorandum in Opposition to Motion in Limine, at 2.

The corporate defendants also contend that the motion to preclude is premature insofar as it seeks preclusion of Bacchetta's testimony against Talco, Marchetta and Mary Bacchetta, because the government did not seek to take Louis Bacchetta's deposition other than in his individual capacity. The corporate defendants suggest that the government first be required to notice the deposition of Talco, Marchetta, and Mary Bacchetta "and hav[e] the Plaintiff call Louis Bacchetta as a witness at those depositions." *Id.* at 9. According to the corporate defendants, when it is determined whether Bacchetta "will participate in those depositions and to what extent," the nature of the appropriate remedy from any invocation of the Fifth Amendment privilege only then may be determined and the government's motion will be ripe for consideration. The parties confirmed in a stipulation scheduling depositions filed November 3, 1993, and at Bacchetta's actual deposition (see transcript at 12), that the deposition of Bacchetta on November 3rd would be in his individual capacity. Thus, it does not appear that the government has as yet taken the deposition of the corporate defendants.

Since oral argument of the motion, the government submitted a letter indicating that it had "ha[d] fully consider[ed] the option [of a grant of immunity for Louis Bacchetta] and has decided that any benefit to the United States in granting the extraordinary relief sought by Mr. Bacchetta is outweighed by the potential detrimental impact the grant of immunity would have on any possible future criminal investigations by any

federal agency." Letter of D. Patrick Mullarkey, dated December 16, 1993. Bacchetta's counsel fleshed out alternatives to preclusion in a post-argument letter dated December 14, 1993. Bacchetta contends that the court (A) may grant a protective order staying further discovery until the applicable statute of limitations affecting Bacchetta's criminal liability has passed, citing *Wehling v. C.B.S.,* 608 F.2d 1084 (5th Cir.1979); (B) may impose sanctions, including dismissal, on the government, as a penalty for failing to seek immunity for Bacchetta, citing *United States v. U.S. Currency,* 626 F.2d 11 (6th Cir.1980), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980); or (C) may enter a protective order, if the foregoing two alternatives are not selected, which would prohibit the use of Bacchetta's deposition transcript and answers to interrogatories in any criminal proceeding except perjury or for impeachment purposes, citing *United States v. Parcels of Land,* 903 F.2d 36 (1st Cir.1990). The corporate defendants also contend, in a post-argument submission dated December 24, 1993, that the real agenda of the government is tactical in nature, and has a purpose to eliminate Bacchetta as a witness for any of the defendants. The corporate defendants oppose Bacchetta's suggestion that a stay of discovery be entered until the statute of limitations has passed because it would unduly prolong "the stranglehold that the government has placed upon Talco's ability to continue its business." *Id.* at 2. The corporate defendants urge the protective order route.

## DISCUSSION

Analysis of the complicated issues presented by this motion begins with the observation that the government, contrary to its intimations at the deposition of Bacchetta, does not now question the proposition that Bacchetta's invocation of the privilege was valid, and that Bacchetta was "confronted by substantial and 'real' and not merely trifling or imaginary hazards of incrimination." *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968), *vacated on other grounds,* 390 U.S. 201 and 202, 88 S.Ct. 898 and 899, 19 L.Ed.2d 1033 and 1034 (1968). *See also, Estate of Fisher v. Commissioner,*

905 F.2d 645, 649 (2d Cir.1990). The government, therefore, has conceded that, although "[a] civil investigation of tax liabilities standing alone is simply not a sufficient basis for a fear of criminal tax prosecution," *United States v. Blumberg,* 787 F.Supp. 67, 71 (S.D.N.Y.1992) (citing *Donaldson v. United States,* 400 U.S. 517, 534–36, 91 S.Ct. 534, 544–45, 27 L.Ed.2d 580 (1971)), there is something more in this case, and a motion to compel Bacchetta's testimony at the deposition over his assertion of the privilege, on the ground that the privilege was improperly invoked without a real threat of prosecution, would be unsuccessful. *See also,* Transcript of Oral Argument.

■ At the same time, "the assertion that the Fifth Amendment privilege against compulsory self-incrimination may be a valid ground upon which a witness ... declines to answer questions, [but] it has never been thought to be in itself a substitute for evidence that would assist in meeting a burden of production." *United States v. Rylander,* 460 U.S. 752, 758, 103 S.Ct. 1548, 1553, 75 L.Ed.2d 521 (1983). Whatever remedy the court chooses must not "convert the privilege from the shield against compulsory self-incrimination which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his." *Id.* 460 U.S. at 758, 103 S.Ct. at 1553.

These two points of departure—that the privilege has been properly invoked and that a witness may not use the privilege as a sword freeing him from his civil discovery obligations and his responsibilities at trial—highlight the profound consequences which may attend invocation of Bacchetta's self-incrimination privilege. Bacchetta therefore faces a very real dilemma—whether to invoke the privilege and suffer a preclusion order of the kind the government seeks, *see United States v. One Parcel of Real Property Commonly Known as 901 N.E. Lakewood Drive, Newport, Oregon,* 780 F.Supp. 715, 721–22 (D.Or.1991) (granting the government's motion to strike where "there is no indication that she would waive her Fifth Amendment privilege if ordered to provide such discovery"), or instead waive the privilege thereby defending the action but exposing himself to the use of his testimony in a possible criminal prosecution. Defendants seek to avoid this dilemma in a number of different ways, each of which will be examined in turn.

## A. *Availability of Preclusion Against Defendants as a Remedy*

■ As a preliminary matter, the Federal Rules authorize discovery of relevant matter which is "not privileged." Fed. R.Civ.P. 26(b)(1). As the government acknowledges, a court cannot order a party to provide discovery over his valid objection that providing the discovery would impinge his self-incrimination privilege without running afoul of Rule 26(b)(1) and the testimonial compulsion clause of the Fifth Amendment. U.S. Const.Amdt. V; *Andover Data Services v. Statistical Tabulating Corporation,* 876 F.2d 1080 (2d Cir.1989). A corollary of this proposition is that sanctions are unavailable under Fed.R.Civ.P. 37(b) in such a circumstance. That rule speaks of refusing to provide discovery "after being directed to do so by the court," Fed.R.Civ.P. 37(b)(1), or "fail[ing] to obey an order to provide or permit discovery," Fed.R.Civ.P. 37(b)(2), neither of which describes the situation when a party invokes the self-incrimination privilege. Nor is a sanction authorized under Rule 37(d), because the party actually appeared at the deposition and he interposed a concededly proper privilege. Rule 37(d) speaks only to the case of a failure to attend the deposition, not to actual attendance and the interposition of a valid privilege.

■ Do the Federal Rules permit a preclusion order, however? The government argues yes, citing *United States v. One Parcel of Real Property Commonly Known as 901 N.E. Lakewood Drive, Newport, Oregon, supra,* in which the court held that the remedies of Rule 37(b)(2) were available notwithstanding the prior failure of the party seeking discovery to move to compel, because "there is no indication that she would waive her Fifth Amendment privilege if ordered to provide such discovery." *Id.* 780 F.Supp. at 721. The court's apparent theory is that, in Fifth Amendment privilege situations, a motion to compel under Rule 37 is available to

the party seeking discovery, and may be granted even if the court is powerless under the Fifth Amendment to enforce it by contempt proceedings or other compulsion cognizable by the self-incrimination clause. Reasoning that such a motion, although available, is unnecessary if the party resisting discovery gives "no indication that she would waive her Fifth Amendment privilege," *Id.* 780 F.Supp. at 721, the court in the Oregon case thus found the remedy of preclusion in Rule 37(b)(2) available as a sanction for invocation of the Fifth Amendment privilege. *Id.* 780 F.Supp. at 720–21. The court acknowledged, at least, that no other rule permits the preclusion remedy. *Id.* 780 F.Supp. at 720 (discussing Rule 12(f)).

I do not find this reasoning persuasive. As indicated above, Rule 37 authorizes sanctions for failing to obey a court order (Rule 37(b)), or for a failure to attend a deposition, (Rule 37(d)), not for properly responding to discovery demands by interposing a valid objection. As stated, discovery extends only to relevant matter which is "not privileged." Fed.R.Civ.P. 26(b)(1). The discovery which is sought from Bacchetta is concededly privileged.

Finding that the sanctions in Rule 37 and in the other Federal Rules of Civil Procedure are not available in this case, however, does not mean that preclusion is unavailable, or that it is premature. There is a "well-settled" principle in criminal cases that, when a witness invokes the self-incrimination privilege "with respect to a non-collateral matter *and* the defendant is deprived of a meaningful opportunity to test the truth of the witness' direct testimony[,] ... the witness' direct testimony should be stricken in whole or in part." *Bagby v. Kuhlman,* 932 F.2d 131, 135 (2d Cir.1991) (emphasis in original), *cert. denied,* —— U.S. ——, 112 S.Ct. 341, 116 L.Ed.2d 281 (1991). *See also, Klein v. Harris,* 667 F.2d 274, 289 (2d Cir.1981); *United States v. Cardillo,* 316 F.2d 606, 611 (2d Cir.1963), *cert. denied,* 375 U.S. 822, 84 S.Ct. 60, 11 L.Ed.2d 55 (1963). These cases are premised on Sixth Amendment confrontation or compulsory process considerations, but they have had some recognition in civil cases which recognize a statutory right of cross-examination, *Pillsbury Company v. Conboy,* 459 U.S. 248, 259 n. 18, 103 S.Ct. 608, 615 n.

18, 74 L.Ed.2d 430 (1983) (collecting authorities), which right has been held to include the possibility that a witness' testimony may have to be stricken if he or she invokes the privilege on collateral matters. *Id.* 459 U.S. at 260 n. 19, 103 S.Ct. at 615 n. 19 (citing *United States v. Cardillo,* 316 F.2d at 611). *See also, United States v. Rylander,* 460 U.S. at 757–58, 103 S.Ct. at 1553 ("This was a time for testimony, and Rylander's *ex parte* affidavit and uncross-examined testimony were properly disregarded by the District Court.") This extension of the principle—that direct testimony may be stricken when the witness invokes the privilege on non-collateral matters—to the civil context has been recognized in the lower courts as well. *See Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 576–77 (1st Cir.1989) (collecting virtually all of the relevant cases then extant); *SEC v. Drexel Burnham Lambert Inc.,* 837 F.Supp. 587, 606 n. 6 (S.D.N.Y.1993) (collecting most of the relevant authority since *Gutierrez–Rodriguez* ). In both of these cited cases, the witness who invoked the privilege throughout the discovery process was prevented, by preclusion order, from an "eleventh hour" waiver of the privilege in time for trial. "A defendant may not use the Fifth Amendment to shield herself from the opposition's inquiries during discovery only to impale her accusers with surprise testimony at trial." *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d at 577. In *SEC v. Drexel Burnham Lambert, Inc., supra,* the district court issued an order, in the face of defendants' eve of trial indication of willingness to testify, "precluding them from testifying as to any matters on which they had previously declined to testify on Fifth Amendment grounds." *Id.,* 837 F.Supp. at 606 n. 6. The leading commentator on this subject suggests that, "[b]ecause the invokers [of the privilege] have not violated any discovery rules, the authority for barring the testimony arises under Fed.R.Civ.P. 26(c) ..., which authorizes any orders needed to protect a party from oppression." R. Heidt, *The Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,* 91 Yale L.J. 1062, 1130 n. 248 (1982) (cited in *SEC v. Drexel Burnham Lambert, supra* ). Whether the source of authority for preclusion is Rule 26(c), or a

more general power of the courts to prevent the cat-and-mouse approach to civil litigation expressly precluded in the last two cited cases, it is the approach of these cases, and not the Rule 37 route relied on by the government and the *Oregon* case, that the court here finds persuasive.[1]

Finding a preclusion remedy available, however, does not answer what the scope of preclusion should be. Should the preclusion extend to the presentation of a defense or to an entire claim upon which Bacchetta's testimony would be relevant, or should it simply extend to a preclusion of testimony by him concerning any subject upon which he chose to claim the self-incrimination privilege. For the reasons stated in F. Fendler, *Waive the Fifth or Lose the Case: Total Preclusion Orders and the Civil Defendant's Dilemma*, 39 Syracuse L.Rev. 1161 (1988), which is supported by the analysis above, I might well reject *SEC v. Cymaticolor Corporation*, 106 F.R.D. 545, 549–50 (S.D.N.Y.1985) and *SEC v. Benson*, No. 84 Civ. 2262, Fed.Sec.L.Rep. ¶ 92,001, 1985 WL 1308 (S.D.N.Y. April 9, 1985); *SEC v. Benson*, 657 F.Supp. 1122 (S.D.N.Y.1987), which granted total preclusion orders against the defendants. *See also*, 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2018 at 145–50 (1970). But the government does not ask for such sweeping relief here. It asks instead only for preclusion of Bacchetta's own testimony. *See* F. Fendler, *supra*, 39 Syracuse L.Rev. at 1194 ("Certainly, the preclusion order should extend to defendant's own testimony.") Since that much is an available remedy under the analysis undertaken above, it is unnecessary to decide the broader question.

Defendants seek to avoid even this limited remedy, and it is to their various arguments that I now turn.

**B.** *Dismissal as Sanction for Failing to Confer Immunity*

 Defendants seek an order which, in the alternative, grants Bacchetta use immunity, stays discovery until the statute of limitations has run, or which grants a protective order against use by third parties of his deposition testimony. First, with respect to use immunity, although they seem to recognize the rule that a court cannot confer immunity on a witness outside the specific parameters of 18 U.S.C.S. § 6001 et seq., defendants seek a conditional order of dismissal as a sanction for the government's refusal to seek immunity for Bacchetta. They seek use of the order as leverage with the government, to induce a grant of immunity. It is true that the court could not compel the government to give Bacchetta immunity. *United States v. Salerno*, 937 F.2d 797, 807 (2d Cir.1991) ("Immunity remains 'preeminently a function of the Executive Branch.'") (quoting *United States v. Turkish*, 623 F.2d 769, 776 (2d Cir.1980), *cert. denied*, 449 U.S. 1077, 101 S.Ct. 856, 66 L.Ed.2d 800 (1981)), *rev'd on other grounds*, —— U.S. ——, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992). *See also, United States v. Blumberg*, 787 F.Supp. at 71. But it is not true that an order of dismissal, conditional or not, is an available remedy.

Defendants cite two cases in support of this alternative. In *United States v. U.S. Currency*, 626 F.2d 11 (6th Cir.1980), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980), which involved forfeiture of alleged gambling proceeds, the court held that the claimants in the forfeiture proceeding "should not be compelled to choose between the exercise of their Fifth Amendment privilege and the substantial sums of money which are the subject of this forfeiture proceeding." *Id.* 626 F.2d at 15. The court directed "the courts ... [to] seek to accommodate both the constitutional right against self-incrimination as well as the legislative intent behind the [civil] forfeiture provision." *Id.* 626 F.2d at 15. Although mindful that the privilege must not be used as a sword "to defeat the government's forfeiture action when alternatives may be available," *id.* 626 F.2d at 16, the court posited immunity at the behest of the government as a "possible alternative." *Id.* Moreover, the court opined that, "should immunity prove, upon consideration, to be the only viable approach in this

---

1. For similar reasons, the court rejects defendants' request that it allow entry of a protective order barring discovery until Bacchetta decides to waive the privilege as trial approaches. With three visits to Rochester by government counsel already in the record, it is evident that the cat-and-mouse approach must now come to a halt.

situation, and should the government then decide against granting immunity, the District Court may chose to impose sanctions, including dismissal, upon the government." *Id.* 626 F.2d at 17. But the court suggested other alternatives, including (1) proof of claimants' title to the property by "other witnesses," *id.* 626 F.2d at 16, (2) requesting "certifications from both federal and state prosecutors guaranteeing that neither will prosecute the appellees for any offenses in any way related to the incidents underlying the forfeiture action," *id.* 626 F.2d at 17, (3) "stay[ing] the forfeiture proceedings until the completion of any criminal prosecutions, or until the relevant statute of limitations for the federal and state criminal offenses have expired," *id.* 626 F.2d at 17, or (4) employing any other "means which it perceives to be best suited for the instant situation." *Id.* 626 F.2d at 17. The court remanded the matter to the district court for further proceedings "to determine whether, as the government asserts, '. . . remedies are available which will preserve appellee's Fifth Amendment rights while also enabling them to answer the complaint and present evidence.'" *Id.*, 626 F.2d at 18. There is no indication in the Reports what the district court ultimately decided.

A related situation was presented in *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir.1979), in which the party asserting the privilege during discovery was a plaintiff in a libel action. The court reversed the district court's order dismissing the libel action as a sanction for plaintiff's assertion of the privilege, and held "that dismissing a plaintiff's action with prejudice solely because he exercises his privilege against self-incrimination is constitutionally impermissible." *Id.*, 608 F.2d at 1087. The court held that a party has a constitutional "due process right to a judicial determination of his civil action" and that "forc[ing] plaintiff to choose between silence and his lawsuit" would impermissibly burden the exercise of "one constitutional right in order to assert another." *Id.*, 608 F.2d at 1087–88.

These cases, each of which seek an "accommodation" of a party's self-incrimination privilege and that party's interest in fully litigating a civil case, are premised on a series of Supreme Court cases which hold that it is an impermissible burden on an individual's assertion of the privilege to preclude him from litigating a constitutional claim or otherwise penalizing him by placing an impermissible cost on the exercise of his privilege. *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (suppressing incriminating testimony of a defendant who seeks to establish standing for litigation of a Fourth Amendment claim); L. Tribe, *American Constitutional Law*, § 12–16, at 1021–22 (2d ed. 1988) (collecting other cases in this line). Although the decision not to "dismiss" a litigant's case or defense by reason of that litigant's invocation of the right to remain silent, or a decision to preclude all proof on an issue upon which a litigant has asserted the privilege, is supported in the cases, *see* authorities collected above, it is difficult to see how these cases apply when the only consequence suggested is a preclusion of the litigant's own testimony. *See* C. Wright & A. Miller, *supra*, at § 2018, p. 149 ("a party may hurt his own cause by the claim of the privilege since he deprives himself of whatever benefit *his own* evidence might provide") (emphasis supplied). Extension of the cases cited by defendant to a case merely .addressing future admissibility of the litigant's own testimony would not comport with the Supreme Court's emphatic statement in *Rylander* that it has "squarely rejected the notion, . . ., that a possible failure of proof on an issue where defendant had the burden of proof is a form of 'compulsion' which requires that the burden be shifted from the defendant's shoulders to that of the government." *United States v. Rylander*, 460 U.S. at 758, 103 S.Ct. at 1553.

If a failure of proof on the part of these defendants is occasioned by Bacchetta's invocation of the privilege, this failure is not a testimonial *compulsion* cognizable by the Fifth Amendment even if the defendant has any burden of proof in this action. Similarly, when the mere consequence of asserting the privilege is the unavailability of the litigant's testimony on an issue which may in the normal course of things result in a judgment in favor of the opposing party because no other evidence exists, no violation of the due process clause occurs. *Baxter v. Palmi-*

*giano,* 425 U.S. 308, 319, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976) ("aside from the privilege against compelled self-incrimination, the Court has consistently recognized that in proper circumstances silence in the face of accusation is a relevant fact not barred from evidence by the Due Process Clause"). The point has been put rather well by Judge Easterbrook:

> Efforts to extend the scope of *Simmons* have not fared well. *E.g. United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *United States v. Kahan,* 415 U.S. 239, 94 S.Ct. 1179, 39 L.Ed.2d 297 (1974). The Court has declined to use *Simmons* to relieve a litigant in civil litigation of the need to establish elements on which he bears a burden of production or persuasion. *Cf. Baltimore Department of Social Services v. Bouknight,* 493 U.S. 549, 110 S.Ct. 900, 107 L.Ed.2d 992 (1990); *United States v. Rylander,* 460 U.S. 752, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). A party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence. Indeed, the Court has held, the tribunal may draw an adverse inference against a civil litigant who asserts the privilege. *Baxter v. Palmigiano,* 425 U.S. 308, 316–20, 96 S.Ct. 1551, 1556–59, 47 L.Ed.2d 810 (1976). If this be seen as a "price" on the assertion of the privilege, so be it. Loss of a weapon by a felon who cannot legally own a gun is not the sort of "price" that should lead a court to imagine the presence of non-existent evidence or to disregard the word "compelled" in the Constitution of the United States.

*United States v. Taylor,* 975 F.2d 402, 404 (7th Cir.1992). Accordingly, it is too much to ask for "accommodation" of Fifth Amendment values when the only relief sought by the government does not impinge on either the self-incrimination privilege or the due process clause. Bacchetta "was free to avail himself of the privilege against self-incrimination but . . . his claim that testimony would incriminate him cannot be transformed into a plausible assertion of innocence . . . *or an adequate denial* . . ." *Sahn v. Pagano,* 302 F.2d 629, 632 (2d Cir.1962) (Friendly, J.)

(emphasis supplied), *cert. denied,* 371 U.S. 819, 83 S.Ct. 34, 9 L.Ed.2d 59 (1962). Nor can his claim that deposition testimony will be incriminating be interposed as a reason to inconvenience the opposing litigant with a dismissal of its action or other sanction for failing to seek immunity. If dismissal of a litigant's claim or defense, and a preclusion of "other proof," are not permissible sanctions for the invocation of the privilege by that litigant, it would be quite illogical to hold that the opposing party must suffer the same sanction unless it removes the reason for the exercise of the privilege, even if it has the power to do so. No right of the party-witness claiming the privilege is implicated by the failure (read preclusion) to testify and so no reason exists to put the opposing party out of business or to suffer some other disability to litigate.

### C. Protective Orders

Although the caselaw is well established that total preclusion should not issue on account of a party defendant's invocation of the Fifth Amendment during the discovery process or on account of the government's refusal to grant immunity in response to a defendant's reliance on the self-incrimination privilege, the caselaw in this circuit appears to sanction, upon a proper showing, issuance of a protective order shielding discovery from third parties. *Martindell v. International Telephone & Telegraph Corporation,* 594 F.2d 291 (2d Cir.1979). Although not relying upon or citing *Martindell* and its progeny in support of issuance of a protective order,[2] defendants request a protective order which "would provide that any testimony by Bacchetta in this case, including affidavits, responses to written interrogatories, testimony at trial and at depositions, could not be used against Bacchetta in any criminal action, by either the federal or state government or any agency of either of those governments." Letter of Jack M. Battaglia, Esq., dated December 24, 1993, at 2. *See also,* letter of John R. Parrinello, Esq., dated December 24, 1993, at 2 (using similar language but acknowledging an "except[ion] in connection with perjury or for the purposes of impeach-

---

**2.** As this decision was about to be filed, counsel for the corporate defendants finally wrote a letter citing *Martindell.* Further treatment of that letter appears, *infra,* fn. 6.

ing the witness on trial"). Defense counsel each cite *United States v. Parcels of Land*, 903 F.2d 36 (1st Cir.1990), in support of a protective order of this kind. The government's papers, curiously, do not address the applicability of the *Martindell* cases, and they flatly reject without elaboration the protective order alternative suggested by defendants.

*Parcels of Land* involved a forfeiture action in which the claimant offered an affidavit in opposition to the government's summary judgment motion which disputed many of the facts relied upon by the government in its moving papers. The filing of the affidavit by the claimant "prompt[ed] the government to withdraw its motion pending Laliberte's deposition." *Id.* 903 F.2d at 42. But the claimant, Laliberte, invoked his Fifth Amendment privilege at the deposition. Thereafter, the government moved to strike his affidavit, "contending that Laliberte could not state his account of the 'facts' when he wished (*e.g.*, in the affidavit), and yet shield this account from scrutiny by invoking the fifth amendment at his deposition." *Id.* 903 F.2d at 43. The circuit court upheld the decision granting the motion to strike, over the claimant's objection that the district court "should not have done so without first doing its best to accommodate the fifth amendment dilemma he faced in having to choose whether to relinquish his property without a fight to avoid the risk of self-incrimination, or defend his property and risk self-incrimination." *Id.* 903 F.2d at 44. It appeared that the district court did seek an accommodation, because "[i]t entered a protective order prohibiting the use of Laliberte's deposition transcript, interrogatory answers and affidavit in any criminal proceeding brought against him by the United States Attorney for the District of Massachusetts, except in connection with perjury charges or for purposes of impeachment." *Id.* 903 F.2d at 44. The claimant's objection on appeal was "that this accommo-

dation was not sufficient because it left open the possibility that his statements could be used against him in proceedings in other jurisdictions, namely New Hampshire." *Id.* 903 F.2d at 44. Finding first that the nature of the accommodation of claimant's Fifth Amendment interests is best left to the discretion of the district court, the circuit court held that a further sealing order as against state authorities was not required by the Constitution. The court reasoned that the dilemma faced by the claimant between complete silence and establishing his claim to the property did not run afoul of the Fifth Amendment and that the resolution attempted by the district court "more than satisfied the requirements of the accommodation principle." *Id.* 903 F.2d at 45.[3]

The Second Circuit's *Martindell* line of cases proceed upon a somewhat different principle. First, it should be emphasized, the Second Circuit's consideration of the protective order route in these types of cases is typically after the fact, that is, in response to motions which test the effectiveness of the protective order against third party efforts at disclosure. In *Martindell*, for example, the district court granted informal permission to the government to intervene in the private action for the purpose of seeking modification of the protective order allowing it access to the pre-trial depositions of some of the defendants. The parties to the action had entered into a court approved stipulation/protective order "to the effect that the deposition should be treated as confidential and used solely by the parties for prosecution or defense of the action" at hand. *Martindell v. International Telephone & Telegraph Corporation*, 594 F.2d at 292. In support of the requested modification, the government argued that the deponents had agreed to testify "without being under any compulsion or coercion" and that therefore they voluntarily

---

**3.** The court also disapproved the claimant's "last minute back peddling on his long standing refusal to be deposed" and upheld the district court's refusal to reconsider the decision to strike on "account [of] his last-minute agreement to answer deposition questions." *Id.* 903 F.2d at 45. Finding that "[t]he motivation for the sudden change of mind seems to be Laliberte's realization that the court was not going to consider his

affidavit in light of refusal to answer deposition questions," the court upheld denial of reconsideration in light of the claimant's failure to submit detailed reasons why the deposition could not have been completed during the discovery phase of the case, and quite simply because "Laliberte's sudden change of heart certainly was not timely." *Id.* 903 F.2d at 45. *See also SEC v. Cymaticolor Corp.,* 106 F.R.D. at 550.

waived or relinquished their Fifth Amendment privilege.

Finding that "a more significant counterbalancing factor" existed for the protective order issued by the district court, "which is to 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all relevant evidence that might conceivably be relevant[,] [which] objective represents the cornerstone of our administration of civil justice[,]" *id.* 594 F.2d at 295, the court held that modification of the protective order in the manner requested by the government will "inhibi[t] [witnesses] from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences." *Id.* 594 F.2d at 295. The court thought that "witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders." *Id.* 594 F.2d at 295–96. In the end, the court held that modification of the protective order should not be issued "absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need." *Id.* 594 F.2d at 296. Although it provided no guidance as to what might constitute "improvidence in the grant of a ... protective order," or what circumstances might be deemed sufficiently "extraordinary" or "compelling" to require modification, the court held that, in the ordinary case, "a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge." *Id.* 594 F.2d at 296.

The Second Circuit reaffirmed its approach in *Minpeco S.A. v. Conticommodity Services, Inc.,* 832 F.2d 739 (2d Cir.1987), stating, "A consequence of reducing the reliability of protective orders would be the 'undermining [of] a procedural system that has been successfully developed over the years

for disposition of civil differences.' " *Id.* 832 F.2d at 742 (bracketed material in original) (quoting *Martindell,* 594 F.2d at 295). The court stated further, "While this concern for the needs of the civil litigation system is not absolute, *Martindell* establishes that in balancing the need of the government for access to discovery materials against the continued integrity of the protective order, the government must show a 'compelling need' to overcome the systemic needs reflected in the protective order." *Id.* 832 F.2d at 742. Describing the *Martindell* approach as a "well-travelled road," *id.* 832 F.2d at 743, the court denied the attempt by the Commodity Futures Trading Commission to modify a protective order issued in the private civil dispute involving the Hunt brothers' silver market trading profits which prevented disclosure "to any federal, state or other government commission * * * without prior approval of the court which shall be requested on reasonable notice to all parties." *Id.* 832 F.2d at 741. The court distinguished, however, cases involving special statutory grants of investigative powers to federal agencies such as the Civil Investigative Demand ("CID") issued by the Department of Justice pursuant to the Antitrust Civil Process Act, 15 U.S.C. § 1311 et seq. *See United States v. GAF Corporation,* 596 F.2d 10 (2d Cir.1979). In the latter cases, the court also must determine whether those parties resisting modification of the protective order had made a " 'particular showing' of need for protection." *Id.* 832 F.2d at 743. Under the *Martindell* approach, however, the entire burden is placed on the party seeking modification of the protective order to show compelling need under the standard elaborated in *Martindell.*

A hint of caution in the *Martindell* approach appeared in *Andover Data Services v. Statistical Tabulating Corporation,* 876 F.2d 1080 (2d Cir.1989), cited by the parties in their last post-argument letters. In that case, which is more like this case than the post hoc review of the protective orders in *Martindell* and *Conticommodity Services,* the issue was whether a district court might compel the deposition testimony of a witness in a civil action over that witness' assertion of a valid Fifth Amendment claim, by issuing a protective order of the kind described in

*Martindell* and its progeny. The court held that the witness could not be compelled to testify in such a case because the *Martindell* protective order is not co-extensive with the Fifth Amendment privilege. Recognizing that a *Martindell* protective order, "no matter how broad its reach, provides no guarantee that compelled testimony will not somehow find its way into the government's hands for use in a subsequent criminal prosecution[,] ... [because] a Rule 26(c) protective order may be overturned or modified based on a finding of improvidence, extraordinary circumstances or compelling need[,]" *id.* 876 F.2d at 1083, the court held that, "as a practical matter it is clear that the protections afforded by a Rule 26(c) order are *not* as extensive as those afforded by the Fifth Amendment, or by a statutory grant of use immunity, and that a protective order therefore cannot be used to abridge a witness' fifth amendment rights." *Id.* 876 F.2d at 1083 (emphasis in original). "Since the protections of a Rule 26(c) order simply are not as 'certain' as the protections of either the Fifth Amendment or a statutory grant of use immunity, *see Pillsbury [v. Conboy]*, 459 U.S. [248,] at 257, 103 S.Ct. [608,] at 614, 74 L.Ed.2d 430 [ (1983) ], we hold that a nonconsenting witness may not be forced to answer potentially incriminating questions in reliance upon such an order, no matter how carefully crafted the order may be." *Id.* 876 F.2d at 1084.[4]

*Andover Data Services*, however, contains the only guidance in Second Circuit *Martindell* jurisprudence on whether the issuance of a protective order might be improvident. The court stated "that the district court's use of a Rule 26(c) protective order in this manner ... raises serious separation of powers issues." *Id.* 876 F.2d at 1084. In explanation, the court observed that, if the district court's attempted use of a protective order for the purpose of compelling deposition testimony in a civil case over the claim of a Fifth Amendment privilege is given effect, it "might very well amount to an impermissible 'de facto' grant of immunity, ..., which this court would be obliged to disavow." *Id.* 876 F.2d at 1084 (quoting *In re Grand Jury Subpoena*, 836 F.2d 1468, 1475 (4th Cir.1988),

*cert. denied,* 487 U.S. 1240, 108 S.Ct. 2914, 101 L.Ed.2d 945 (1988)). On the other hand, the court in *Andover Data Services* emphasized "that our holding today is in no way intended to abrogate the *Martindell* line of cases, wherein we have upheld the use of protective orders limiting disclosure of potentially incriminating testimony where parties have *voluntarily* consented to testify in civil cases in reliance upon such protective orders." *Id.* 876 F.2d at 1084 (emphasis in original). The effect of *Andover Data Services*, therefore, appears to be that a district court can grant a motion to compel deposition testimony if the putative deponent agrees to testify in reliance on a *Martindell* protective order but cannot grant a motion to compel if the deponent stands on his Fifth Amendment privilege, even in the face of the court's willingness to enter such a protective order, because the compulsion inherent in the order to compel issued upon the promises made in the protective order is cognizable testimonial compulsion under the Fifth Amendment.

The court was again faced with a *Martindell* protective order in *In re Grand Jury Subpoena Duces Tecum Dated April 19, 1991*, 945 F.2d 1221 (2d Cir.1991). In that case, depositions were conducted in a bankruptcy proceeding involving the reorganization of Eastern Airlines. Because the bankruptcy examiner "was under enormous pressure to expedite his investigation in the interest of creditors who were owed billions of dollars, the travelling public and thousands of Eastern employees whose jobs depended upon a prompt reorganization[,] ... the United States Trustee, the examiner, and the respective counsel for Eastern, various unions and the creditors' committee signed a stipulation to keep confidential the information obtained during the depositions taken by the examiner." *Id.* 945 F.2d at 1222. A bankruptcy judge signed the stipulation as a sealing order pursuant to Bankruptcy Rule 9018. Subsequently, the United States Attorney for the Eastern District of New York obtained a federal grand jury subpoena duces tecum directing the bankruptcy examiner

---

**4.** The witness in question in *Andover Data Services* was a non-party, but I find no principled distinction in Fifth Amendment jurisprudence between party witnesses and non-party witnesses.

to produce the deposition transcripts, and the bankruptcy examiner moved to quash the subpoena, citing the protective order. The district court "found that the sealing order exceeded the power of the bankruptcy court because it conflicted with the Congressional judgement that the decision to immunize testimony must be made by the Attorney General." *Id.* 945 F.2d at 1223. The district court "also held that ... [the examiner] had the burden of demonstrating why the subpoena should be quashed, and that he had not met this burden." *Id.* 945 F.2d at 1221.

In an opinion reaffirming *Martindell* and its progeny, the Second Circuit remanded for findings "on whether the protective order was improvidently granted or whether the government had made a showing of exceptional circumstances or a compelling need." *Id.* 945 F.2d at 1224. It was also important that "the district court erroneously placed the burden on the examiner to show why the subpoena should have been quashed rather than placing the burden on the government to show why the protective order should be overturned." *Id.* 945 F.2d at 1224. In rejecting the government's argument that the protective order issued by the bankruptcy judge was an improper *de facto* grant of immunity to the deponents in the bankruptcy action, the court stated: "The *Martindell* test, however, does not transform a protective order into a grant of immunity because the test allows a protective order to be overcome by a showing of improvidence in the grant of the order, extraordinary circumstances or compelling need." *Id.* 945 F.2d at 1224–25. The court "decline[d] to follow the Fourth Circuit's apparent per se rule that a grand jury subpoena will always be enforced despite the existence of an otherwise valid protective order[,]" and reaffirmed its observation in *Palmieri v. State of New York,* 779 F.2d 861 (2d Cir.1985), where "we noted that 'the fact that the magistrate granted the sealing orders ... specifically to preclude the Attorney General from learning the details about the subject proceedings [does not] necessarily show that he acted improvidently.'" *In re Grand Jury Subpoena Duces Tecum Dated April 19, 1991,* 945 F.2d at 1225 (bracketed material in original) (quoting *Palmieri,* 779 F.2d at 866). Again, however, the circuit court gave no guidance to district courts on the issue of whether such a protective order might be considered improvidently granted. *Compare In re Grand Jury Proceedings (Williams) v. United States,* 995 F.2d 1013 (11th Cir.1993) (rejecting the *Martindell* approach).

## D. *Propriety of Issuance of Protective Order—the Good Cause Standard*

With little or no guidance from the Second Circuit concerning the standards district courts should use when issuing protective orders of the kind upheld in *Martindell* and its progeny, district courts are left to the "good cause" standard of Rule 26(c). "Rule 26[c], ..., is not a blanket authorization for the court to prohibit disclosure of information whenever it deems it advisable to do so, but is rather a grant of power to impose conditions on *discovery* in order to prevent injury, harassment or abuse of the court's processes." *Bridge C.A.T. Scan Associates v. Technicare Corporation,* 710 F.2d 940, 944–45 (2d Cir.1983) (emphasis in original) (bracketed material supplied). "[T]he burden is upon the party seeking nondisclosure or a protective order to show good cause." *Penthouse International Ltd. v. Playboy Enterprises, Inc.,* 663 F.2d 371, 391 (2d Cir. 1981). *See also, Dove v. Atlantic Capital Corporation,* 963 F.2d 15, 19 (2d Cir.1992) (burden of establishing good cause on proponent of protective order); *In re "Agent Orange",* 821 F.2d 139, 145 (2d Cir.1987) ("the party seeking a protective order has the burden of showing that good cause exists"), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987).

Good cause must be established and not merely alleged. In *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.,* 998 F.2d 157 (3rd Cir.1993), the court recapitulated its oft-quoted test to determine whether good cause has been proved:

As we explained in *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1121 (3d Cir. 1986), "Rule 26(c) places the burden of persuasion on the party seeking the protective order. To overcome the presumption, the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specif-

ic examples or articulated reasoning, do not satisfy the Rule 26(c) test."

We emphasized that "the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head." *Id.* at 1122.

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d at 166 (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121, 1122 (3rd Cir.1986), *on remand*, 113 F.R.D. 86 (D.N.J.1986) (denying protective order on the ground of failure to specify or elaborate injury that might result from disclosure), *aff'd*, 822 F.2d 335, 346 (3rd Cir. 1987), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987)). *See Gulf Oil Company v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 2201 n. 16, 68 L.Ed.2d 693 (1981) (" 'To establish good cause for a protective order ..., "[t]he courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements ..." ' ") quoting *In re Halkin*, 598 F.2d 176, 193 (D.C.Cir.1979) (quoting 8 C. Wright & A. Miller, *Federal Practice & Procedure*, § 2035 p. 265 (1970)); *Beckman Industries, Inc. v. International Insurance Company*, 966 F.2d 470, 476 (9th Cir.1992) (quoting the *Cipollone* test), *cert. denied*, —— U.S. ——, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 7–8 (1st Cir.1986) ("A finding of good cause must be based on a particular factual demonstration of potential harm, not on conclusory statements.") [5]

■ There are three independent reasons why defendants have failed to show good cause in this case. First, defendants

have failed to show that the limited preclusion remedy sought by the government in any way burdens their Fifth Amendment privilege. One might naturally suppose that issuance of the protective orders in the *Martindell* line of cases was premised upon the "accommodation principle" that defendants urge on this court. But whether or not the accommodation principle was sufficient good cause under Rule 26(c) prior to issuance of the Supreme Court's decisions in *Rylander* and *Baxter*, the reach of the accommodation principle does not extend, for the reasons described above, to a case in which the only price or cost of exercising the privilege is preclusion of the witness' own testimony and an adverse inference arising from the failure to testify. *Baxter v. Palmigiano*, 425 U.S. at 316–20, 96 S.Ct. at 1557–59. As the cases discussed above show, the choice or dilemma facing Bacchetta is not of a kind which requires "accommodation" as a means to avoid an impermissible testimonial compulsion or to facilitate litigating a defense under the due process clause. Therefore, the accommodation principle has no application to this case, and cannot furnish the "good cause" for issuance of a protective order Rule 26(c) demands. *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America*, No. 90 Civ. 5722, 1992 WL 188379 at *7–8 (S.D.N.Y. July 30, 1992).

Second, this case does not present any of the special circumstances present in *Martindell* and its progeny which warranted issuance of a protective order in those cases. In *Martindell*, for example, the central purpose of the protective order "had been to protect ITT from adverse publicity while the civil action was in progress [which charged ITT officers with waste of the corporation's

---

**5.** The same approach is taken in our circuit. As succinctly stated:

> To satisfy the burden of showing good cause, the moving party must demonstrate that "disclosure will work a clearly defined and very serious injury." * * * The movant must also show that there will "indeed be harm by disclosure."
>
> * * * * * *
>
> It has been decided that in order to demonstrate good cause, "the injury which allegedly will result from disclosure must be shown with specificity, and that conclusory statements to the effect are insufficient."

*Cuno Incorporated v. Pall Corporation*, 117 F.R.D. 506, 508 (E.D.N.Y.1987) (quoting *Zenith Radio Corporation v. Matsushita Electric Industrial Company, Ltd.*, 529 F.Supp. 866, 891 (E.D.Pa.1981)). *See also, Gelb v. American Telephone and Telegraph Company*, 813 F.Supp. 1022, 1034 (S.D.N.Y.1993) (" 'the courts generally required a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements" ' ") quoting *John Does I–IV v. Yogi*, 110 F.R.D. 629, 632 (D.D.C.1986) (quoting *United States v. Exxon Corporation*, 94 F.R.D. 250, 251 (D.D.C.1981)).

assets through expenditures to influence Chilean elections], and not to 'insulate any deponent or witness from a proper law enforcement investigation....' " *Martindell v. International Telephone & Telegraph Corporation*, 594 F.2d at 298 n. 2 (Medina, J., concurring) (quoting letter from plaintiff's counsel). In *Conticommodity Services*, although some of the concern was fear of prosecution, the protective order was issued, in part, to facilitate discovery of "non-party witnesses" who might otherwise have "becom[e] victims of litigation cross-fire" arising out of the Hunt brothers silver trading manipulations. *Minpeco, S.A. v. Conticommodity Services, Inc.*, 653 F.Supp. 957, 958, 960 (S.D.N.Y.1987), *aff'd* 832 F.2d 739 (2d Cir.1987). And in *Grand Jury Subpoena Duces Tecum*, the protective order was issued within the context of the "enormous pressure" the bankruptcy examiner was under, in the Chapter 11 reorganization of Eastern Airlines (which was described as a "wasting asset"), "to expedite his investigation in the interests of creditors who were owed billions of dollars, the travelling public and thousands of Eastern employees whose jobs depended on a prompt reorganization." *In re Grand Jury Subpoena Duces Tecum Dated April 19, 1991*, 945 F.2d at 1222. Although the defendants in this case are no less entitled to full adjudication of their defenses than the litigants in these cited cases, none of the same or similar collateral considerations are alleged or appear to be present in this action. All we have is Bacchetta's naked desire to avoid prosecution which, I have held, is not sufficient good cause in itself to warrant issuance of a protective order.

■ Third, in the *Martindell* context, a proponent's demonstration of good cause must, of necessity, include a reliable statement of willingness to voluntarily testify under the terms of a protective order. Bacchetta has not unequivocally indicated such an interest in testifying. Bacchetta's counsel, Mr. Parrinello, has not proffered Bacchetta's willingness to voluntarily testify at his deposition in reliance on the protective order, nor has he indicated his willingness to undertake the risk that the protective order might be vacated at the behest of the government at a future time. Bacchetta's preferred remedies are a stay until the statute of limitations passes (*see infra*), and dismissal as a sanction for failure of the government to confer immunity. Letter of John R. Parrinello, Esq., dated December 24, 1993, at 2. Bacchetta's counsel posits the protective order route only as "one of the alternatives available" if the court rejects his preferred remedies. *Id.* But no affirmative indication of willingness to testify is indicated. As *Andover Data Services* makes clear, a district court cannot use a *Martindell* protective order as a device to facilitate discovery unless the party to be deposed "ha[s] *voluntarily* consented to testify ... in reliance upon such [a] protective orde[r]." *Andover Data Services v. Statistical Tabulating Corporation*, 876 F.2d at 1084 (emphasis in original). And that willingness to testify necessarily carries with it a clear understanding (assumption of risk) that there is "no guarantee that compelled testimony will not somehow find its way into the government's hands for use in a subsequent criminal prosecution." *Id.* 876 F.2d at 1083. None of Bacchetta's representations to the court give assurance that he is willing to undertake that risk, and indeed they suggest, implicitly at least, that he is unwilling to take that risk.[6] Therefore,

---

**6.** As this decision was about to be released, Mr. Battaglia, who represents Talco Contractors, Inc., Marchetta Properties, Inc., and Mary Bacchetta, wrote the court in a letter dated January 10, 1994, to indicate that "Louis Bacchetta wants to testify on behalf of himself and the corporations, particularly Talco[,]" and that "[i]f he obtains the protective order, he will be deposed personally and in the representative capacity on behalf of Talco and possibly the other corporate defendants." There are two fundamental problems with this letter. Mr. Battaglia does not represent Mr. Bacchetta and therefore is not able to make such a representation on his behalf. One presumes that, when separate counsel was

obtained, differing and conflicting interests were present which warranted the separate representation. DR 5-105(C). If that is so, indeed in any event, counsel for a separate party cannot make the representation required by *Andover Data Services* that Bacchetta will assume the risk to his Fifth Amendment rights that the *Martindell* protective order route entails. Separately, this motion concerns the government's notice of deposition to Bacchetta in his individual capacity only. Bacchetta's counsel made clear at the deposition itself that there was as yet no question of Bacchetta's posture under the Fifth Amendment during any future deposition of the corporations. It is true that the corporations may designate him

denial of the proffered *Martindell* alternative could validly be based on this circumstance alone.

### E. *Stay Pending Lapse of the Statute of Limitations*

▓▓▓▓▓ Defendants have suggested that the court stay discovery proceedings until the statute of limitations has run on any offenses which might be revealed by Bacchetta's deposition testimony. The standard for issuance of such a stay has recently been recapitulated as follows:

It is well settled that district courts have the inherent power, in the exercise of discretion, to issue a stay when the interests of justice require such action. *E.g., Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir. 1986); *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368, 1375 (D.C.Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980) (citing *United States v. Kordel,* 397 U.S. 1, 12 n. 27, 90 S.Ct. 763, 770 n. 27, 25 L.Ed.2d 1 (1970)); *SEC v. Downe,* No. 92–4092, 1993 WL 22126 at *12–13, 1993 U.S.Dist. LEXIS 753, at *45–46 (S.D.N.Y. Jan. 26, 1993) (citing *Landis v. North American Co.,* 299 U.S. 248, 255, 57 S.Ct. 163, 166, 81 L.Ed. 153 (1936)); *United States v. Certain Real Property and Premises,* 751 F.Supp. 1060, 1062 (E.D.N.Y.1989); *Brock v. Tolkow,* 109 F.R.D. 116, 119 (E.D.N.Y.1985). Depending on the particular facts of the case, the court may decide to stay civil proceedings, postpone civil discovery, or impose protective orders. *Dresser Industries,* 628 F.2d at 1375.

When deciding whether to grant a stay, courts consider five factors: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Arden Way Associates v. Boesky,* 660 F.Supp. 1494, 1497 (S.D.N.Y.1987); *Twenty First Century Corp. v. LaBianca,* 801 F.Supp. 1007, 1010 (E.D.N.Y.1992).

*Volmar Distributors, Inc. v. The New York Post Company, Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y.1993). Of paramount importance in this case is the lack of any pending criminal prosecution and the absence of any solid indication that a criminal investigation is underway or contemplated. Defendants point only to the terms of the Complaint which, they contend, is framed in the very terms of the relevant criminal statutes. They might also point to the fact that the government has only very recently declined to seek immunity for Bacchetta.

But neither of these circumstances bring this case into that class of cases in which discretion should be exercised in favor of staying discovery until the statute of limitations has passed. "In the case of pre-indictment requests for a stay, courts in this district [S.D.N.Y.] 'will deny a stay of the civil proceeding where no indictment has issued.'" *United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of America,* 782 F.Supp. 920, 925 (S.D.N.Y. 1992) (collecting cases) (quoting *In re Par Pharmaceutical, Inc. Securities Litigation,* 133 F.R.D. 12, 14 (S.D.N.Y.1990)). *See also, United States v. Private Sanitation Industry of Nassau/Suffolk, Inc.,* 811 F.Supp. 802, 805–06 (E.D.N.Y.1992). "If no indictment has been returned and no known investigation is underway, the case for a stay of discovery, ... is 'far weaker.'" M. Pollack, *Parallel Civil and Criminal Proceedings,* 129 F.R.D. 201, 204 (1989) (quoting *SEC v. Dresser Industries, Inc.,* 628 F.2d at 1376). *Compare United States v. Premises and Real Property at 297 Hawley Street, Rochester, N.Y.,* 727 F.Supp. 90 (W.D.N.Y.1990) (stay granted when indictment pending under 21 U.S.C. § 881(i)). Moreover, the parties have not identified the full range of criminal offenses which may be relevant, and therefore, "because it ... [is] unclear to what

---

to testify on their behalf as permitted by Rule 30, but the court does not now have before it any motion in connection with the deposition of the corporations, and the preclusion ordered here does not extend to the answer or defense to this

action interposed by the corporations. In any event, the privilege is personal to Bacchetta and it is only he that can effectively make the representation sought to be made by Talco's counsel.

criminal charges the defendant is exposed, the court ... [is] unable to determine precisely how long a stay would be necessary." F. Fendler, *supra,* 39 Syracuse L.Rev. at 1187 n. 165. Accordingly, the option of a stay of discovery is not appropriate.

### CONCLUSION

For the foregoing reasons, the various remedies suggested by the defendants to accommodate defendant Louis Bacchetta's privilege to remain silent are rejected, and the government's motion for an order precluding his future testimony in the action, on behalf of Louis Bacchetta, individually, is granted. This order does not address, because the record is not yet ripe for a determination, whether his testimony should be precluded in connection with the government's action against any other defendant. This order is conditioned on Bacchetta's failure to testify at his rescheduled deposition within 20 days of the entry of this order. He must make his choice by then, or, if he fails to make a choice within twenty days, the preclusion order shall issue. *See* nn. 1, 3 *ante.*

SO ORDERED.