**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**CERTAIN REAL PROPERTY AND PREMISES KNOWN AS: 4003–4005 5TH AVE., BROOKLYN, NY, Certain Real Property and Premises Known as: 5014 3rd Ave., Brooklyn, NY, Certain Real Property and Premises Known as: 314 39th St., Brooklyn, NY, Defendants,**

**Maria V. Mendez & Juan A. Tapia,**
**Claimants–Appellants,**

**James W. Poirer, Claimant.**

**No. 659, Docket 94–6149.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 19, 1995.

Decided May 18, 1995.

Arthur P. Hui, Asst. U.S. Atty., Brooklyn, NY (Zachary W. Carter, U.S. Atty. E.D.N.Y., Deborah B. Zwany, Asst. U.S. Atty.), for plaintiff-appellee.

Albert Brackley, Brooklyn, NY, for claimant-appellant Tapia–Ortiz.

Before: WALKER, JACOBS, and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

Forfeiture proceedings, because they permit the Government in a civil action to seize property linked with criminal activities, often raise troublesome legal issues. In defending this civil action to confiscate his property after being convicted on federal narcotics charges, Juan A. Tapia–Ortiz created just such a troublesome issue when he attempted to withdraw a prior invocation of his Fifth Amendment privilege against self-incrimination.

Tapia–Ortiz twice invoked the privilege in refusing to answer the Government's interrogatories early in this forfeiture proceeding. After the Government moved for summary judgment, Tapia–Ortiz asked to withdraw his assertion of the Fifth Amendment and sought to respond to the Government's contentions. The United States District Court for the Eastern District of New York (Thomas C. Platt, Chief Judge) held that it was too late for Tapia–Ortiz to withdraw his prior Fifth Amendment claim, and ruled that he could not submit any material previously asserted to be within his privilege against self-incrimination. Since Tapia–Ortiz did not put forth any other evidence, the District Court granted summary judgment to the Government.

On appeal, Tapia–Ortiz claims that he should have been allowed to withdraw his assertion of the Fifth Amendment in order to submit an affidavit that would have created an issue of material fact. Because courts must take care not to punish valid invocations of the privilege against self-incrimination and must try to accommodate those who would properly seek to claim the privilege, a prior assertion of the Fifth Amendment does not preclude a litigant's later attempt to submit evidence. Nevertheless, because the law cannot permit abuses of the privilege and because trial courts must have broad discretion to control and fashion remedies in the discovery process, we conclude that, on the facts of this case, the District Court did not exceed its discretion when it barred Tapia–Ortiz from testifying as to matters covered by his prior Fifth Amendment claim. Accordingly, we affirm the District Court's grant of summary judgment to the Government.

## BACKGROUND

Tapia–Ortiz and a co-defendant were convicted in February 1992 for conspiring to distribute heroin and cocaine and for possessing, with an intent to distribute, the same drugs. The evidence presented in their criminal trial indicated that Tapia–Ortiz and his co-defendant had imported cocaine from Florida and had sold and distributed heroin in New York. Much of this evidence came from a cooperating witness, Hector Hernandez, who claimed to have bought narcotics from Tapia–Ortiz many times at various locations. Tapia–Ortiz was initially sentenced in July 1992; a subsequent hearing led to his resentencing on July 9, 1993. On appeal, this Court affirmed Tapia–Ortiz's conviction, but his sentence was vacated and remanded. *See United States v. Tapia–Ortiz*, 23 F.3d 738 (2d Cir.1994).

In March of 1992, during these criminal proceedings, the Government began the instant *in rem* action, pursuant to 18 U.S.C. § 981(a) and 21 U.S.C. § 881(a), seeking civil forfeiture of the defendant property located at 4003–4005 Fifth Avenue, Brooklyn, New York. Subsequently, in May 1992, the Government filed an amended complaint and served Tapia–Ortiz with a first set of interrogatories. Tapia–Ortiz filed a Notice of Claim as the owner of the defendant property in June 1992, but completely failed to answer the Government's amended complaint or its first set of interrogatories. In September 1992, the Government served another set of interrogatories upon Tapia–Ortiz, who again did not respond. Finally, in January 1993, Magistrate Judge Michael L. Orenstein ordered Tapia–Ortiz to reply within twenty days.

Tapia–Ortiz submitted an initial set of answers in February 1993, but asserted the Fifth Amendment privilege as his only response to those questions concerning narcotics trafficking activities. After the Government complained about other, unrelated deficiencies in these initial replies, Magistrate Judge Orenstein ordered Tapia–Ortiz to make a further answer. In his supplemental responses, Tapia–Ortiz again invoked the Fifth Amendment to avoid answering questions that related to narcotics trafficking.

The Government scheduled a summary-judgment conference in September 1993, and asserted, in its statement supporting summary judgment, that the defendant property was used in aid of the commission of narcotics crimes. The Government also noted that Tapia–Ortiz had invoked the Fifth Amendment in response to discovery inquiries about his narcotics trafficking activities. In his counter-statement, Tapia–Ortiz disputed that the defendant property was used to facilitate narcotics trafficking crimes. He also indicated that he was in the process of revising his interrogatory responses and that he now would like to withdraw his assertion of the Fifth Amendment privilege against self-incrimination.

The District Court concluded that "Tapia–Ortiz may not invoke his privilege against self-incrimination to hinder the government's discovery efforts and then seek to waive or deny the existence of the privilege on the eve of trial or equivalent thereof." It therefore refused Tapia–Ortiz's request to withdraw the privilege and ruled that Tapia–Ortiz was not to "be permitted to oppose the government's summary judgment motion with any material previously claimed to be within [his] Fifth Amendment privilege against self-incrimination." *United States v. 4003–4005 Fifth Avenue*, 840 F.Supp. 6, 7–8 (E.D.N.Y. 1993). Because Tapia–Ortiz thereafter "failed to produce *any* evidence by way of documents, testimony or affidavits to support his claim that the property was not used as alleged," the District Court granted the Government's motion for summary judgment, holding that "no issue of fact exists and the government is entitled to judgment as a matter of law." *United States v. 4003–4005 Fifth Avenue*, 855 F.Supp. 50, 54–55 (E.D.N.Y. 1994).

## DISCUSSION

In his brief on appeal, Tapia–Ortiz concedes that once he was precluded from withdrawing his assertion of the Fifth Amendment and from submitting an affidavit disputing the Government's contentions, summary judgment for the Government was appropriate. We agree because Tapia–Ortiz

did not in any other way rebut the Government's evidence detailing narcotics sales at the defendant property—evidence that clearly satisfied the Government's initial burden of establishing reasonable grounds to believe that there was a nexus between the seized property and illegal drug activity, *see United States v. Daccarett*, 6 F.3d 37, 55–56 (2d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994).[1] Consequently, the only issue we face on this appeal is whether the District Court erred when it prevented Tapia–Ortiz from opposing the Government's motion for summary judgment with affidavits involving matters previously claimed to be within his Fifth Amendment privilege.[2]

### Asserting (and Withdrawing) the Fifth Amendment in Civil Actions

■ While the Fifth Amendment states only that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself," U.S. Const. amend. V, there is no question that an individual is entitled to invoke the privilege against self-incrimination during a civil proceeding. *See, e.g., Lefkowitz v. Turley*, 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973) (explaining that the Fifth Amendment permits an individual "not to answer official questions put to him in any . . . proceeding, civil or criminal, formal or informal, where the answer might incriminate him"). And this means that a civil litigant may legitimately use the Fifth Amendment to avoid having to answer inquiries during any phase of the discovery process. *See* 8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, *Federal Practice and Procedure* § 2018, at 273 (2d ed. 1994) [hereafter Wright, *Federal Practice*] ("[C]ourts have repeatedly held that the privilege against self-incrimination justifie[s] a person in refusing to answer questions at a deposition, or to respond to interrogatories, or requests for admissions, or to produce documents." (footnotes omitted)).

Though constitutionally protected, a civil litigant's invocation of the privilege against self-incrimination during the discovery process is far from costless. It will, for example, always disadvantage opposing parties— at least to some extent—since it keeps them from obtaining information they could otherwise get. *See SEC v. Graystone Nash, Inc.*, 25 F.3d 187, 190 (3d Cir.1994) ("[I]nvocation of the Fifth Amendment poses substantial problems for an adverse party who is deprived of a source of information that might conceivably be determinative in a search for the truth."). Nevertheless, because litigants do not have a right to discovery of privileged matters, *see* Fed.R.Civ.P. 26(b), such litigants, even if deprived of key facts through an opposing party's assertion of the Fifth Amendment, often have no recourse in the civil litigation other than to comment upon the claim of privilege in the hope of persuad-

---

1. Late in his brief, Tapia–Ortiz appears to suggest that his Notice of Claim, which included a statement that the defendant property was not used to facilitate narcotics activity, alone sufficed to create a genuine issue of material fact to preclude summary judgment. We are unclear whether Tapia–Ortiz actually intends to make such a claim of error given the two prior concessions in his brief that summary judgment was appropriate once the District Court refused to allow him to withdraw his invocation of the Fifth Amendment. In any event, since a defendant seeking to defeat summary judgment cannot normally rely on his pleadings alone, but instead must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), we find no error in the District Court's conclusion that Tapia–Ortiz's failure to submit any admissible proof to contest the Government's evidence entitled the Government to summary judgment. *Cf. United States v.*

*15 Black Ledge Drive*, 897 F.2d 97, 102 (2d Cir. 1990) (affirming summary judgment in a forfeiture action, and explaining that claimant's "conclusory allegations," presented without a "scintilla" of supporting evidence, were insufficient to prevent judgment as a matter of law).

2. Tapia–Ortiz's brief mentions in passing the recent decision of *Austin v. United States*, —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)—in which the Supreme Court held that the Eighth Amendment's prohibition on excessive fines applies to civil forfeitures—but he does not discuss the Eighth Amendment in any detail. At oral argument, Tapia–Ortiz's counsel stated that he was not alleging an Eighth Amendment violation, and that he only noted *Austin* to support the claim that Tapia–Ortiz should have been permitted to withdraw his invocation of the Fifth Amendment. Under the circumstances, we need not consider Eighth Amendment claims in this case.

ing the trier of fact to draw a negative inference. *See Baxter v. Palmigiano,* 425 U.S. 308, 318–20, 96 S.Ct. 1551, 1557–59, 47 L.Ed.2d 810 (1976); *Brown v. United States,* 356 U.S. 148, 159, 78 S.Ct. 622, 629, 2 L.Ed.2d 589 (1958) (Black, J., dissenting).

At the same time, however, an invocation of the Fifth Amendment "is not a substitute for relevant evidence," and a litigant claiming the privilege is not "freed from adducing proof in support of a burden which would otherwise have been his." *United States v. Rylander,* 460 U.S. 752, 758, 761, 103 S.Ct. 1548, 1553, 1554, 75 L.Ed.2d 521 (1983). In other words, a "party who asserts the privilege against self-incrimination must bear the consequence of lack of evidence," *United States v. Taylor,* 975 F.2d 402, 404 (7th Cir. 1992), and the claim of privilege will not prevent an adverse finding or even summary judgment if the litigant does not present sufficient evidence to satisfy the usual evidentiary burdens in the litigation.[3] *See* Wright, *Federal Practice* § 2018, at 288 ("In some cases if a party claims the privilege and does not give his or her own evidence there will be nothing to support his or her view of the case and an adverse finding or even a directed verdict or grant of summary judgment will be proper."). Thus, though a litigant in a civil action is entitled to avoid answering questions that might lead to self-incrimination, this entitlement often conflicts with the litigant's interest in testifying and obtaining whatever benefits such testimony might provide.

The tension between self-incrimination concerns and the desire to testify may be especially acute for a claimant in a civil forfeiture proceeding. In forfeiture, a claimant typically must prove that the defendant prop-erty was not used unlawfully or not derived from or traceable to criminal transactions, or else he must establish a statutory "innocent owner" defense. *See* 18 U.S.C. § 981(a); 21 U.SC. § 881(a). Yet the claimant is often subject to criminal prosecution based on the same alleged illegal behavior that supports the confiscation. The claimant thus "faces a dilemma: remain silent and allow the forfeiture or testify against the forfeitability of his property and expose himself to incriminating admissions." *United States v. $250,000,* 808 F.2d 895, 900–01 (1st Cir.1987).

█ In view of this dilemma, appellate courts have held that upon a timely motion by the claimant, district courts should make special efforts to "accommodate both the constitutional [privilege] against self-incrimination as well as the legislative intent behind the forfeiture provision." *United States v. United States Currency,* 626 F.2d 11, 15 (6th Cir.), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 290 (1980). And, in so doing, trial courts should not disregard the fact that the plaintiff in forfeiture actions is the Government, which controls parallel criminal proceedings in federal court and also possesses the power to grant some forms of immunity. *See Graystone Nash,* 25 F.3d at 193–94 ("Courts must bear in mind that when the government is a party in a civil case and also controls the decision as to whether criminal proceedings will be initiated, special consideration must be given to the plight of the party asserting the Fifth Amendment."); *Shaffer v. United States,* 528 F.2d 920, 922–23 (4th Cir.1975) (relying heavily on the Government's power to grant immunity).[4]

█ More generally, because *all* parties—those who invoke the Fifth Amendment and

---

**3.** As the Supreme Court has explained, the fact that a litigant may be forced to choose "between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination." *Williams v. Florida,* 399 U.S. 78, 83–84, 90 S.Ct. 1893, 1896–97, 26 L.Ed.2d 446 (1970); *see also Rylander,* 460 U.S. at 758, 103 S.Ct. at 1553 ("We have squarely rejected the notion . . . that a possible failure of proof on an issue where the defendant had the burden of proof is a form of 'compulsion' which requires that the burden be shifted. . . .").

**4.** These considerations do not mean that a district court, in trying to accommodate all inter-ests, is necessarily required to stay a forfeiture action while a claimant seeks to resolve a parallel criminal action or that it must enter a protective order which would keep a claimant's testimony from being used in any other proceeding. *See United States v. 566 Hendrickson Boulevard,* 986 F.2d 990, 996 (6th Cir.1993); *see also United States v. Parcels of Land,* 903 F.2d 36, 44 (1st Cir.1990) ("[S]o long as a district court attempts to accommodate a claimant's fifth amendment interests, the nature and extent of accommodation should be left primarily to that court's discretion."). Nevertheless, when a claimant validly invokes the Fifth Amendment and expeditiously seeks the court's help in protecting his inter-

those who oppose them—should be afforded every reasonable opportunity to litigate a civil case fully [5] and because exercise of Fifth Amendment rights should not be made unnecessarily costly, see *Spevack v. Klein,* 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967), courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege. Thus, if there is a timely request made to the court, the court should explore all possible measures in order to "select that means which 'strikes a fair balance . . . and . . . accommodates both parties.' " *United States Currency,* 626 F.2d at 16 (quoting *Shaffer,* 528 F.2d at 922). In doing this, it should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties. *See Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1088 (5th Cir.1979) (a court should "measure[ ] the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible").[6]

■ In some instances, however, a litigant in a civil proceeding who has invoked the Fifth Amendment may not seek any accommodation from the district court, and may instead simply ask to withdraw the privilege and testify. In other cases, a litigant may ask to give up the privilege rather than accept the accommodation that the court has offered. The district court should, in general, take a liberal view towards such applications, for withdrawal of the privilege allows adjudication based on consideration of all the material facts to occur. The court should be especially inclined to permit withdrawal of the privilege if there are no grounds for believing that opposing parties suffered undue prejudice from a litigant's later-regretted decision to invoke the Fifth Amendment. *See Graystone Nash,* 25 F.3d at 190–94; *see also FTC v. Sharp,* 782 F.Supp. 1445, 1452–53 (D.Nev.1991) (refusing to bar a litigant's later testimony, since "it does not appear that the [opposing party] has been unfairly prejudiced" by prior assertion of Fifth Amendment); *FTC v. Kitco of Nevada, Inc.,* 612 F.Supp. 1282, 1291 (D.Minn.1985) (admitting a litigant's testimony, since opposing party "has not been unfairly surprised or prejudiced by the [litigant's] assertion of the privilege and subsequent decision to testify at trial").

■ This does not mean that withdrawal of the claim of privilege should be permitted carelessly. Courts need to pay particular attention to how and when the privilege was originally invoked. Since an assertion of the Fifth Amendment is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties. *See Graystone Nash,* 25 F.3d at 190 (discussing "the potential for exploitation" through abusive assertions of the Fifth Amendment in civil actions). If it appears that a litigant has sought to use the Fifth Amendment to abuse or obstruct the discovery process, trial courts, to prevent prejudice to opposing parties, may adopt remedial pro-

ests, the court must explore the feasibility and fairness of accommodations of this sort. *See United States Currency,* 626 F.2d at 16–18 (canvassing various possibilities in order to accommodate most aptly a claimant's Fifth Amendment rights in a forfeiture proceeding).

5. As this Court has explained, the "full disclosure of all evidence that might conceivably be relevant . . . represents the cornerstone of our administration of civil justice." *Martindell v. International Telephone and Telegraph Corp.,* 594 F.2d 291, 295 (2d Cir.1979).

6. What serves as an appropriate procedure for accommodating the interests of the party asserting the Fifth Amendment, while at the same time respecting opposing parties' right to fair treatment within the litigation, will necessarily vary from case to case. Courts have explored a range of approaches, including: the entry of a protective order prohibiting the use of the civil litigant's responses in any criminal proceeding in that district, *see Parcels of Land,* 903 F.2d at 45; a stay of discovery or the civil action until parallel criminal proceedings have run their course, *see Wehling,* 608 F.2d at 1089; and attempts to arrange for immunity to ensure that a civil litigant will not be prosecuted for his or her statements, *see Shaffer,* 528 F.2d at 922. *See generally United States v. Talco Contractors, Inc.,* 153 F.R.D. 501, 505–12 (W.D.N.Y.1994) (discussing the relative value of the various procedural possibilities designed to accommodate the parties' interests).

cedures or impose sanctions.[7] *See id.* at 190–94; *see also Wehling,* 608 F.2d at 1089 (stressing that courts must be "free to fashion whatever remedy is required to prevent unfairness"). In such circumstances, particularly if the litigant's request to waive comes only at the "eleventh hour" and appears to be part of a manipulative, "cat-and-mouse approach" to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege. *See In re Edmond,* 934 F.2d 1304, 1308–09 (4th Cir.1991); *United States v. Parcels of Land,* 903 F.2d 36, 42–46 (1st Cir.1990); *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 576–77 (1st Cir.1989); *United States v. Talco Contractors Inc.,* 153 F.R.D. 501, 505–12 (W.D.N.Y.1994); *United States v. Sixty Thousand Dollars,* 763 F.Supp. 909, 913–14 (E.D.Mich.1991).

■ In the end, exactly how a trial court should respond to a request to withdraw the privilege—or indeed, more generally, how it should react to any motion precipitated by a litigant's assertion of the Fifth Amendment in a civil proceeding—necessarily depends on the precise facts and circumstances of each case. And it is not the province of appellate courts to try "to set down a hard and fast rule ... when, typically, the District Court is in a better position to know what means will accomplish the end of accommodating [all] interests." *United States Currency,* 626 F.2d at 16; *see also Graystone Nash,* 25 F.3d at 192–94 (stressing "the circumstances of the particular litigation" and that devising an "appropriate remedy is within the discretion of the trial court").

■ A reviewing court must still make sure that a trial court has not, through inappropriate procedural remedies or unwarranted sanctions, unduly burdened litigants' valid attempts to seek the protection that the privilege against self-incrimination provides.

And we must do so especially when there is nothing to suggest that the Fifth Amendment or its attempted withdrawal was used abusively or to gain an unfair tactical advantage.[8] *See Graystone Nash,* 25 F.3d at 192 ("Because the privilege is constitutionally based, the detriment to the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side."). But as long as a trial court considers the relevant factors and acts with moderation to accommodate both a litigant's valid Fifth Amendment interests and the opposing parties' needs in having the litigation conducted fairly, we will not disturb the measures used by that court in the exercise of its discretion.

### Tapia–Ortiz's Attempt to Withdraw His Invocation of Fifth Amendment

■ The preceding principles lead us to the conclusion that the District Court did not abuse its discretion in its response to Tapia–Ortiz's use of the Fifth Amendment. Accordingly, we have no basis to reverse the Court's ruling that Tapia–Ortiz may not submit in evidence any material previously claimed by him to be within the privilege against self-incrimination.

The District Court expressly recognized that it "should strive to accommodate" a litigant's valid Fifth Amendment interests in a civil proceeding. *4003–4005 Fifth Avenue,* 840 F.Supp. at 7. After giving due consideration to how and when Tapia–Ortiz utilized the privilege, however, the Court found that Tapia–Ortiz had previously failed to "petition th[e] court to institute some provisions to accommodate [his] interests," and that the time when most means of accommodation could properly be applied had passed. *Id.* The District Court also made clear that it thought that Tapia–Ortiz had utilized the Fifth Amendment in an abusive or manipulative fashion, by "asserting and waiving the

---

7. A trial court's authority in this regard stems from its broad discretion to control and to fashion remedies for abuses of the discovery process. *See* Fed.R.Civ.P. 26; *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976).

8. Thus, circuit courts have reversed decisions in which a trial court has automatically entered judgment against the party that invoked the Fifth

Amendment or has precluded that party from presenting any evidence whatsoever. *See Graystone Nash,* 25 F.3d at 190–94 (reversing an order barring defendants from offering any evidence after they invoked the Fifth Amendment); *Wehling,* 608 F.2d at 1087 (reversing a holding that plaintiff's assertion of the Fifth Amendment during discovery required the dismissal of his claim).

privilege when convenient" and by "persistently asserting his Fifth Amendment rights throughout the pendency of this proceeding" and "then seek[ing] to waive or deny the existence of the privilege on the eve of trial or the equivalent thereof." *Id.*

The underlying facts amply support the District Court's conclusion that Tapia–Ortiz was using the Fifth Amendment improperly. Before his initial invocation of the Fifth Amendment, Tapia–Ortiz, by failing to answer any of the Government's interrogatories for nearly a year, had stonewalled the Government's attempt to proceed with its action. After a Magistrate Judge, losing patience, ordered him to reply to the Government's attempts to obtain discovery within twenty days, Tapia–Ortiz finally responded but limited his answers by invoking the Fifth Amendment. When ordered to supplement some of his other deficient answers to the Government's questions, he again asserted the privilege against self-incrimination. At last, a full six months later and only after the Government had actually moved for summary judgment did Tapia–Ortiz indicate that he wished to waive the Fifth Amendment and submit to the Government's discovery efforts. At no time during any stage of the proceedings did Tapia–Ortiz approach the District Court to seek any sort of accommodation of his Fifth Amendment interests.

Given this pattern of abusing the discovery process, the District Court appears to have been acting well within its discretion when it ruled that Tapia–Ortiz was to be prevented from submitting "any material previously claimed to be [covered by his] Fifth Amendment privilege against self-incrimination." *4003–4005 Fifth Avenue,* 840 F.Supp. at 7–8. His history of obstruction suggests that Tapia–Ortiz was simply using all available techniques—including the Fifth Amendment—to hinder and delay the Government's action. On these facts, the District Court was entitled to conclude that Tapia–Ortiz ought not to be allowed to block the Government's ac-

tion through such means, and especially ought not, without sanctions, to be allowed to use the Fifth Amendment to further his obstructionist purposes.

■ The District Court did not explicitly review whether the Government had suffered or was likely to suffer prejudice from Tapia–Ortiz's actions, factors that should have been considered expressly. But given the lengthy delay Tapia–Ortiz precipitated, and the timing of his attempt to withdraw his prior assertion of the Fifth Amendment, the Court in this case could reasonably presume prejudice to the Government from the manner in which he had utilized the privilege. As courts and commentators have noted, opposing parties will frequently suffer prejudice (at the very least from increased costs and delays) when a litigant relies on the Fifth Amendment during discovery and then decides to waive the privilege much later in the proceeding. *See, e.g., Graystone Nash,* 25 F.3d at 191 (detailing the harms from a "belated waiver of the privilege"); Frances S. Fendler, *Waive the Fifth or Lose the Case: Total Preclusion Orders and the Civil Defendant's Dilemma,* 39 Syracuse L.Rev. 1161, 1191 n. 181 (1988) (discussing the prejudice that occurs when a defendant seeks to withdraw a prior assertion of the Fifth Amendment at the last minute in order to defeat a motion for summary judgment). In the circumstances of this case, therefore, we hold that the District Court's failure to make an express finding of prejudice was harmless error.[9]

Significantly, the preclusion order entered here was reasonably and appropriately tailored to the circumstances of this case. The District Court did not bar Tapia–Ortiz from submitting any evidence at all. It ruled only that he could not submit evidence concerning matters he had previously shielded from discovery through his invocation of the Fifth Amendment. In other words, in the scope of its order, no less than in its decision to issue

---

9. When it is unclear whether a litigant's attempt to withdraw a prior assertion of the Fifth Amendment presents the possibility for prejudice, the trial court, before entering a preclusion order or other significant sanction, ought explicitly to explore the effects that the assertion of the privilege had on all concerned. *See Graystone Nash,* 25 F.3d at 192–94. *See generally* Robert Heidt, *The*

*Conjurer's Circle—The Fifth Amendment Privilege in Civil Cases,* 91 Yale L.J. 1062, 1130–31 (1982) (suggesting that when prior invoker of the Fifth Amendment indicates a "willingness to waive and respond to discovery," whether to allow testimony "should turn on the degree of prejudice caused ... by ... earlier invokings").

the order, the District Court acted with that moderation which balancing the interests of the parties in this difficult area requires.

## CONCLUSION

In sum, a trial court, to prevent prejudice to opposing parties and to control attempts to manipulate discovery, may in appropriate cases bar litigants from testifying concerning those matters about which they had previously improperly impeded discovery through an invocation of the Fifth Amendment. And the District Court here did not abuse its discretion when it decided, under the circumstance of this case, that the appropriate response to Tapia–Ortiz's actions was precisely such a sanction. Moreover, since the Government made a sufficient showing to carry its initial burden in this forfeiture proceedings, and Tapia–Ortiz did not submit any evidence to show that the defendant property was not utilized in the manner alleged by the Government, we affirm the District Court's grant of summary judgment to the Government.