**FIDELITY FUNDING OF CALIFORNIA and Fidelity Funding Financial Group, Inc., Plaintiffs,**

v.

**Isaac REINHOLD, et al., Defendants.**

**No. 95–CV–3130(ARR)(CLP).**

United States District Court,
E.D. New York.

Oct. 22, 1997.

Jack G. Stern, Wendy Z. Brenner, Barrett & Gravante LLP, New York City, for UTA, Masel, Mendlovic and Welz.

Michael A. Lynn, New York City, for Fidelity.

Gerald Shargel, Jay Goldberg, Gustave H. Newman, Newman & Schwartz, Andrew Miltenberg, Nesenoff & Miltenberg, Philip L. Guarino, Ross & Hardies, Ben Brafman, Brafman, Gilbert & Ross, Roy I. Martin, Bizar & Martin, LLP, David Field, Field, Lomenzo & Turret, P.C., Marvin Segal, Srocco & DeMaio, P.C., New York City, Steven Legum, Carlucci & Legum, Mineola, NY, Wiiliam C. House, New York City, Abraham B. Kreiger, Great Neck, NY, Daniel Galinson, Kaplowitz & Galinson, Garden City, NY, Samuel J. Reich, Reich, Werner & Alexander, Pittsburgh, PA, Jack Segal, Rick Steiner & Tannenbaum, New York City, Allen Ashley, Brooklyn, NY, Marc Newman, Newman & Berger, New York City, Israel Weinstock, Belle Harbor, NY.

## OPINION AND ORDER

ROSS, District Judge.

Defendants Michael Mendlovic, Masel Supply Company Corp. ("Masel"), United Talmudical Academy of Boro Park ("UTA") and Aron Welz (collectively referred to as the moving defendants) have moved the court for a stay of this action as a result of the recent criminal indictment of Mendlovic, Masel, and UTA among other defendants in this civil RICO case. For the following reasons, the stay is granted as to defendant Mendlovic but denied as to Masel, UTA and Welz.

### FACTUAL BACKGROUND

Plaintiff, Fidelity Funding of California, Inc. ("Fidelity"), along with its parent, Fidelity Funding Financial Group, Inc. ("FFFG"), filed a complaint in this case on August 4, 1995, alleging causes of action in RICO, fraud, conversion and other counts against some 33 defendants. On September 21, 1995, various defendants moved for a stay of these proceedings arguing that they were subject to a possible criminal proceeding for their actions involved in this case and that the court should exercise its discretion to

grant the motion for a stay. On November 2, 1995, this court denied the motion for a stay with leave to renew should defendants be indicted.

This action has proceeded expeditiously in the absence of a stay. During the course of discovery, many defendants, including Michael Mendlovic and Aron Welz, have responded to discovery requests by asserting their Fifth Amendment privilege. Additionally, a number of corporate defendants, including Masel and UTA, have produced witnesses who have asserted the Fifth Amendment privilege. On December 5, 1996, Fidelity served a motion for partial summary judgment against more than a dozen defendants, including Mendlovic, Masel and UTA. On April 14, 1997, the court granted a motion by various defendants to dismiss the claims of FFFG but denied in large part the motion to dismiss Fidelity's claims. On May 23, 1997, after additional discovery, the moving defendants responded to Fidelity's motion for partial summary judgment according to the scheduling order initially established by Magistrate Judge Cheryl L. Pollak, and on July 23, 1997, Fidelity submitted its reply papers on its motion for partial summary judgment. Although a small number of very minor discovery disputes remain pending, this court is issuing a simultaneous opinion on Fidelity's motion for partial summary judgment.

On July 16, 1997, a Grand Jury in the Southern District of New York indicted Isaac Reinhold, Josef Goldstein, Irving Goldstein, Michael Mendlovic, Herbert Greenfield, and United Talmudical Academy ("UTA") in *United States v. Reinhold,* 97 Cr. 686 (S.D.N.Y.) (SS). All of the indicted defendants are defendants in this action as well. On September 16, 1997, Judge Sidney Stein set a trial date of March 2, 1998 for the criminal proceeding. As a result of this indictment, the moving defendants have renewed their requests for a stay of this civil action. They argue that they have already been prejudiced in this action by the need for individual defendants to invoke the Fifth Amendment privilege. Mendlovic claims that subsequent to a criminal trial he will testify in these proceedings, while the other moving defendants argue that the testimony that others would give, either at a criminal trial or in a subsequent civil proceeding, will exculpate them.

## LEGAL ANALYSIS

Each of the four moving defendants is in a different posture on this motion for a stay. Of the corporate defendants, Masel and UTA, only UTA has been indicted. Neither corporate defendant is entitled to the Fifth Amendment privilege in either the criminal or civil action. *See, e.g., Braswell v. United States,* 487 U.S. 99, 102, 108 S.Ct. 2284, 101 L.Ed.2d 98 (1988) (noting that artificial entities are not protected by the Fifth Amendment). Mendlovic has been indicted and he is entitled to assert the Fifth Amendment privilege in both the criminal and civil proceedings, although his assertion of the Fifth Amendment privilege in the civil proceeding allows the trier of fact to draw an adverse inference against him. *Baxter v. Palmigiano,* 425 U.S. 308, 318–20, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Finally, Welz, who has not been indicted, stands in the same position as Mendlovic regarding his assertion of his Fifth Amendment privilege in this civil action.

### I. *Standard for Granting a Stay*

In *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), the Supreme Court explained that under most circumstances there is no due process violation when a defendant faces parallel civil and criminal proceedings. Nevertheless, courts retain their inherent power to stay proceedings. As Justice Cardozo explained,

> the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes in its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment which must weigh competing interests and maintain an even balance.

*Landis v. North American Co.,* 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Using this decision as its guidepost, federal courts have attempted to develop criteria for

determining when to stay a civil proceeding that is parallel to a criminal case.

■ One of the most often employed tests for determining whether to stay a parallel civil proceeding was developed by Judge Louis H. Pollak of the Eastern District of Pennsylvania in *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56–58 (E.D.Pa.1980). The *Golden Quality* test balanced the following factors:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the civil] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Id.* at 56. Judge Milton Pollack of the Southern District of New York refined this test and identified the four factors that courts find most significant in determining whether to grant a stay: (1) the commonality of transactions or issues, (2) the timing of the motion, (3) judicial efficiency, and (4) the public interest. Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 203 (1990). In practice, the major factor in determining whether a court will grant a stay is whether a defendant has been indicted. *See* Order of November 2, 1995 at 3 (citing cases). *See also Securities and Exchange Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375–76 (D.C.Cir.), *cert. denied*, 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980) ("Other than where there is specific evidence of agency bad faith or malicious governmental tactics, the strongest case for deferring civil proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter.")

This case, however, is different from the cases that follow the *Golden Quality* criteria and revolve around the timing of the indictment because, unlike those cases, discovery is substantially complete in this case and

Fidelity has moved for partial summary judgment against a number of the civil defendants including all who have been indicted. Accordingly, the court must evaluate the *Golden Quality* factors in light of this substantial difference from prior cases.

In considering the other factors identified in *Golden Quality*, the court notes that there is no effect on the public interest as this case is not analogous to a case involving misbranded drugs, *see Kordel*, 397 U.S. at 11, 90 S.Ct. 763, false or misleading financial information, *Dresser*, 628 F.2d at 1377, or inflated charges to the public. *United States v. Private Sanitation Indus. Assoc. of Nassau/Suffolk, Inc.*, 811 F.Supp. 802, 807 (E.D.N.Y. 1992). Accordingly, this case does not "involve a tangible threat of immediate and serious harm to the public at large [such that the public] will suffer any irreparable injury if [the action] is stayed." *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y.1985) (McLaughlin, J.). Thus, the court will first address the issues of judicial efficiency and Fidelity's interests as to the whole proceeding and will then balance those concerns against the interests of each defendant considered separately.

## II. *Judicial Efficiency*

The court sees little effect on judicial efficiency in granting or denying this motion. Because discovery is essentially completed, any further delays brought about by the stay would not significantly increase the court's, or the litigants', burden. Even if granted, Fidelity's motion for partial summary judgment will not end this civil case because Fidelity has not moved on all claims against the defendants named in the motion, and has not moved against a number of defendants at all. This court is also aware of two additional motions that currently are being briefed. Thus, it is not at all clear that this action would be concluded before the criminal action even absent a stay of these proceedings. While a speedy resolution of the criminal action could hasten a settlement of this action, it is not certain that the criminal action will be resolved in April 1998 or that a stay for the moving defendants would substantially reduce the court's workload. Accordingly,

the court accords little weight to the factor of judicial efficiency in assessing and balancing the equities in this case.

### III. Fidelity's Interest

Fidelity clearly has a strong interest in the continuation of the civil proceeding. In its amended complaint, it alleged that the defendants defrauded it of more than $5.3 million and it is seeking to recover nearly all of those funds,[1] as well as treble damages against those defendants named in its RICO claims. Additionally, Fidelity has been exceedingly diligent in its efforts to achieve a speedy resolution of the civil proceeding, and the court gives Fidelity's efforts strong weight in determining the motions for a stay. On the other hand, as the court concludes in its decision on the motion for partial summary judgment, defendants Isaac Reinhold and Mendel Kotlarsky are liable for the entirety of the amount of the fraud as well as damages on the RICO claims. Additionally, Masel is liable for any damages resulting from the fraud in which Mendlovic was involved, and UTA, Josef Goldstein and Irving Goldstein bear joint and several liability with Welz for any damages resulting from the fraud in which Welz may be determined to have been involved.[2] Thus, a stay as to any particular defendant does not eliminate, and may not even substantially reduce, the possibility that Fidelity can rapidly collect the full amount of the judgments rendered as a result of the court's decision on the motion for partial summary judgment. Furthermore, with a trial date of March 2, 1998 and a trial expected to last five or six weeks if the defendants maintain their current plea of not guilty, Fidelity can expect a resolution of the criminal matter by April of 1998.

### IV. Defendants' Interests

Because each of the defendants stands in a different position regarding their interests in this proceeding and in the criminal action, the court will address each defendant's interests separately. In addressing these interests, the court notes that this is a unique situation where defendants have been indicted after the close of discovery and with a motion for partial summary judgment pending against them.

### A. Michael Mendlovic

■ As described above, Mendlovic has been indicted in the criminal case and is a subject of Fidelity's motion for partial summary judgment. Many of the cases describing a defendant's interest in a stay of a parallel civil proceeding refer particularly to a stay of discovery in the civil proceeding. Thus, the interests that courts frequently attempt to protect include the decision whether to assert the Fifth Amendment in the civil proceeding, the ability of the prosecution to determine the defense strategy through the civil case, and the possibility that the prosecution will obtain discovery beyond the limits of Fed.R.Crim.P. 16(b). See, e.g., Dresser Indus., 628 F.2d at 1376. Because these forms of prejudice may have already occurred in this case prior to the indictment, the court must first address whether Mendlovic still has any interest in obtaining a stay of the civil proceeding other than simply to delay the possibility of having to pay damages to Fidelity.

#### 1. Mendlovic's Continuing Interests

As noted, those cases in which courts granted stays prior to discovery appear motivated by substantial equity issues raised by a dilemma that the defendant Mendlovic has already faced—that is, of defending either the civil or the criminal proceeding, but not both. "[E]ven if an accused does not have an absolute constitutional right to defend himself in a criminal action unfettered by a parallel civil action, a civil proceeding that pressures an accused to make incriminating statements may still impinge upon the values

---

1. Although Fidelity already has reached a settlement as to certain defendants, most of its loss remains unsatisfied.

2. This statement, of course, does not in any way indicate whether Welz is liable at all, as he was not subject to the motion for partial summary judgment. If Fidelity is able to demonstrate his involvement in the fraud, as it has demonstrated regarding UTA and the Goldsteins, Welz likely would be jointly and severally liable for the amount of damages resulting from UTA's participation in the scheme.

underlying the privilege and give rise to an equitable claim." Note, Using Equitable Powers to Coordinate Parallel Civil and Criminal Actions, 98 Harv.L.Rev. 1023, 1029, March 1985; *Parallel Civil and Criminal Proceedings,* 129 F.R.D. at 202 (noting that a parallel civil proceeding may cause the defendant to "confront the prospect of divulging information which may incriminate him"). As a result, courts tend to frame defendants' interest as "avoiding the quandary between waiving their Fifth Amendment rights or effectively forfeiting the civil case." *Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. Transworld Mechanical, Inc.,* 886 F.Supp. 1134, 1140 (S.D.N.Y.1995); *accord Volmar Distributors, Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 39 (S.D.N.Y. 1993) ("Proceeding with discovery would force these defendants into the uncomfortable position of having to choose between waiving their Fifth Amendment privilege or effectively forfeiting the civil suit.").

The use of the timing of the indictment as a nearly dispositive benchmark in determining whether to stay the civil case reflects this concern that a defendant have the opportunity to defend both the civil and the criminal proceeding. Prior to the indictment, the criminal proceeding has not crystallized to a point where criminal concerns take precedence over civil; post-indictment, the threat to the defendant has shifted. Thus, a stay is not meant merely to protect the defendant from discovery but also to protect him from the unfairness of being unable to defend in one or the other forum. As Judge McLaughlin, then of this court, wrote:

> Concededly, it does not offend the Constitution if a defendant in a civil case is asked questions the answers to which might incriminate him. But even if a defendant's dilemma does not violate the fifth amendment or due process, it certainly undercuts the protections of those provisions, and a Court can exercise its discretion to enable a defendant to avoid this unpalatable choice when to do so would not seriously hamper the public interest.

*Brock,* 109 F.R.D. at 120–21.

Just as the court may seek to avoid forcing a defendant into making this unpalatable choice, an equitable stay allows the court to mitigate the harshness of the choice, particularly after a change in circumstances makes the pain of the choice more immediate. Of course, a stay of the civil case will only protect the defendant's interests in the civil case if the defendant will be able to testify after the criminal matter has concluded. In this case, although Mendlovic has indicated that he wishes to testify after the conclusion of the criminal action, Fidelity argues that he should be precluded from testifying. Hence, in considering Mendlovic's motion for a stay, the court must address whether Mendlovic might be able to testify in the civil proceeding at all. Without finally deciding this issue, which is neither ripe for decision nor currently directly before the court, as discussed below, the court determines, for purposes of analyzing Mendlovic's continuing interests, that it would likely allow Mendlovic to testify in the future if he chose to withdraw his invocation of the Fifth Amendment.

In *United States v. Certain Real Property and Premises Known as: 4003–4005 5th Ave. Brooklyn, NY,* 55 F.3d 78 (2d Cir.1995), the Second Circuit addressed whether a litigant in a civil case who had previously asserted his Fifth Amendment privilege could withdraw that privilege in order to submit an affidavit in opposition to a summary judgment motion. The Second Circuit explained that, "[b]ecause courts must take care not to punish valid invocations of the privilege against self-incrimination and must try to accommodate those who would properly seek to claim the privilege, a prior assertion of the Fifth Amendment does not preclude a litigant's later attempt to submit evidence." *Id.* at 80. The court noted the important principles of affording all parties "every reasonable opportunity to litigate a civil case fully and [assuring that] exercise of Fifth Amendment rights should not be made unnecessarily costly," *id.* at 83–84 (citing *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967)), and concluded that a

> district court should, in general, take a liberal view towards [an application to withdraw the privilege and testify], for withdrawal of the privilege allows adjudication based on consideration of all the

material facts to occur. The court should be especially inclined to permit withdrawal of the privilege if there are no grounds for believing that opposing parties suffered undue prejudice from a litigant's later-regretted decision to invoke the Fifth Amendment.

*Id.* at 84. In determining whether to allow the litigant to withdraw his invocation of the Fifth Amendment, the court "should give due consideration to the nature of the proceeding, how and when the privilege was invoked, and the potential for harm or prejudice to opposing parties." *Id.* (citing *Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1089 (5th Cir.1979)).

In assessing whether Mendlovic would be allowed to withdraw his invocation of the Fifth Amendment after a criminal trial, the court notes first that, comparing the indictment in the criminal case with the Amended Complaint and the materials submitted in connection with Fidelity's motion for partial summary judgment in this case, both cases involve substantially the same facts with regards to Mendlovic. In addition, Mendlovic's potential liability in this civil case is well over a million dollars. Thus, the court finds that the civil case could impose a substantial liability on Mendlovic resulting from the same issues that are involved in the criminal proceeding.

In *Certain Real Property and Premises,* 55 F.3d at 85–86, the Second Circuit affirmed the district court's refusal to allow the litigant to withdraw his assertion of the Fifth Amendment largely because of how and when he had invoked the privilege. The court cautioned that:

> Since an assertion of the Fifth Amendment is an effective way to hinder discovery and provides a convenient method for obstructing a proceeding, trial courts must be especially alert to the danger that the litigant might have invoked the privilege primarily to abuse, manipulate or gain an unfair strategic advantage over opposing parties. In such circumstances, particularly if the litigant's request to waive comes only at the 'eleventh hour' and appears to be part of a manipulative, 'cat-and-mouse approach' to the litigation, a trial court may be fully entitled, for example, to bar a litigant from testifying later about matters previously hidden from discovery through an invocation of the privilege.

*Certain Real Property and Premises,* 55 F.3d at 84 (citations omitted). With regard to Mendlovic, the court finds that, unlike certain defendants who have not moved for a stay, he has not previously abused the Fifth Amendment privilege to obstruct the discovery process. Moreover, since the discovery period is essentially closed, there is no likelihood that he would abuse the process in the future in such a way as to militate against allowing him to withdraw his invocation of the Fifth Amendment. Finally, insofar as Fidelity's motion for summary judgment is concerned, Mendlovic seeks this stay substantially closer to midnight than to the eleventh hour. Nonetheless, it is clear that Mendlovic has made his request in response to the indictment brought against him and the possibility that a relatively speedy criminal trial can alleviate his concerns regarding self-incrimination and provide him with the opportunity to testify in this case. There is nothing that even remotely suggests that Mendlovic manipulated the timing of either Fidelity's motion for partial summary judgment or the indictment in order to make this motion. Accordingly, the court finds that Mendlovic has not unfairly manipulated invocation of the privilege, having initially asserted his Fifth Amendment privilege when this action was in its incipient stages and having maintained this position since that time without abusing the discovery process.[3]

Finally, at the present time the court perceives no real possibility of irremediable prejudice to Fidelity if Mendlovic is permitted to withdraw his invocation of the Fifth Amendment at some time in the future. Fi-

---

**3.** Although Mendlovic submitted an affidavit dated August 10, 1995, the affidavit did not address the substantive issues presented but covered, rather, matters involving the continuance or dissolution of temporary attachments issued at the outset of the case. Therefore, it did not waive Mendlovic's Fifth Amendment privilege, nor can it be viewed as manipulation or abuse of that privilege.

delity argues that it has proceeded through discovery on the assumption that Mendlovic and the other moving defendants would continue to invoke the Fifth Amendment. Even if this is true, Fidelity has not identified any discovery that it forbore from obtaining nor has it indicated why it could not obtain such discovery expeditiously should Mendlovic be allowed to withdraw his Fifth Amendment privilege. Accordingly, it is far from clear that allowing Mendlovic to withdraw his invocation of the Fifth Amendment in the future would substantially prejudice Fidelity. In light of this factor, as well as the liberal policy toward withdrawal of the Fifth Amendment invocation and the fact that Mendlovic has not manipulated the Fifth Amendment privilege to abuse the discovery process, the court finds it likely that if, as Mendlovic represents, he will seek to withdraw his invocation of the Fifth Amendment following resolution of the criminal proceeding, a remedy may be fashioned that will permit him to do so without unduly prejudicing Fidelity.

### 2. Balance of Factors

Balancing the factors, the court finds it appropriate to stay this proceeding as to Mendlovic. Having been placed in the unenviable position of choosing whether to defend this action or to invoke the Fifth Amendment and remain silent, Mendlovic chose to invoke the Fifth Amendment. As a result, he has not been able to contest the factual assertions made by Fidelity and he is in danger of losing a summary judgment motion despite never having been able to contest it without fear of prosecution. Now that he has been indicted, however, there is a foreseeable time in which Mendlovic may no longer fear prosecution, thus obviating the need for him to invoke the Fifth Amendment. Because his use of the Fifth Amendment has been appropriate, there is a reasonable likelihood that, at such time, he would be allowed to withdraw his invocation of the Fifth Amendment and provide testimony on his own behalf. While this stay may impede Fidelity's ability to collect the amount that it was defrauded, which is particularly unfortunate considering Fidelity's remarkable race against the indictment, Fidelity's interests are not wholly un-

protected because the court has granted it summary judgment against a number of other defendants in the case. Thus, the court grants Mendlovic's motion for a stay until such time as his involvement in the criminal proceeding ends or until such time as Fidelity can demonstrate that a stay is no longer appropriate. The court notes also that this stay might have the effect, if the case is otherwise ready, of delaying a trial in the action.

### B. Masel and UTA

■ Most other courts that have addressed stay motions by corporate defendants have avoided deciding whether the corporate defendants are entitled to the stay based on their own concerns because those courts have stayed the whole case (against individual and corporate defendants) so as to avoid duplicative discovery. See, e.g., Transworld Mechanical, Inc., 886 F.Supp. at 1141; Volmar Distributors, 152 F.R.D. at 41–42; Bruner Corp. v. Balogh, 819 F.Supp. 811, 816 (E.D.Wis.1993). This case, however, poses no concern regarding the efficiency of discovery because the discovery process as to the moving defendants is essentially complete. Furthermore, unlike Mendlovic, Masel and UTA never had a Fifth Amendment privilege to assert. Accordingly, the primary reason for staying the action as to Mendlovic—limiting the cost to him of his appropriate invocation of the Fifth Amendment—does not apply to Masel and UTA. Any use these corporate defendants may have made of individual defendant's exercise of the Fifth Amendment privilege is merely a windfall. They cannot, at this stage of the proceedings, interpose the willingness to provide future testimony by a defendant legitimately asserting the Fifth Amendment in an effort to collect yet another windfall through a stay of any pretrial proceedings. Because granting a stay to Masel and UTA would prejudice Fidelity without advancing any opposing Fifth Amendment concerns, this court must deny a stay of pre-trial proceedings as to Masel and UTA.

### C. Welz

■ Finally, Welz has properly invoked his Fifth Amendment privilege in this pro-

ceeding. However, he has not been indicted in the criminal action. Accordingly, the basis for his stay motion is considerably less substantial than Mendlovic's. Indeed, Welz is no different from any defendant in a civil case who has invoked the Fifth Amendment but has not yet been indicted. Accordingly, as the court explained in denying a previous motion for a stay of this action, a stay is generally appropriate "only after the criminal investigation of the defendant seeking the stay has ripened into an indictment." Order of November 2, 1995, at 3 (citing *Citibank, N.A. v. Hakim*, No. 92 Civ. 6233, 1993 WL 481335 (S.D.N.Y. Nov. 18, 1993) (Mukasey, J.); *United States v. District Council of New York City*, 782 F.Supp. 920, 925 (S.D.N.Y. 1992); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 811 F.Supp. 802, 805 (E.D.N.Y.1992); *In re Par Pharmaceutical, Inc. Securities Litigation*, 133 F.R.D. 12, 13 (S.D.N.Y.1990)).

 The court is aware of a possible inequity resulting from this decision. Since Welz was not indicted nor, indeed, even subpoenaed to provide documents or to testify before the Grand Jury, *see* Defendants' Memorandum of Law at 3, it could be argued that he is likely less culpable than Mendlovic and UTA. If this is true, then the resolution of this motion may appear inequitable since it protects Mendlovic from civil liability until such time as he can testify without fear of self-incrimination, but leaves Welz facing the dilemma of whether to testify in this action and face later possible criminal sanction, or to leave Fidelity's evidence against him uncontested. Be that as it may, in reality, this resolution is more than equitable for Welz. Unlike Mendlovic, who is assured of facing a criminal proceeding, Welz may never be indicted. Moreover, Welz is not subject to Fidelity's motion for partial summary judgment, and thus, under appropriate circumstances, he too may later be able to withdraw his Fifth Amendment invocation and provide evidence on his own behalf. Finally, the indictment and provisionally-fixed trial date establish a clear point after which Mendlovic's Fifth Amendment concerns will dissipate; there is no equivalent termination date for Welz's Fifth Amendment concerns. Although due process may provide no relief for

defendants in the shoes of Mendlovic or Welz, *see Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970), the court finds, under the circumstances of this case, that in the interest of fairness a defendant who is protected by the Fifth Amendment should be free to defend himself, whenever possible, in both civil and criminal proceedings. In this case, Welz is not under indictment in any criminal proceeding and is not in immediate danger of losing a civil judgment. Consequently, his motion for what amounts to an indefinite stay of the civil proceedings against him must be denied.

### CONCLUSION

For the reasons described above, Mendlovic's motion for a stay is granted and Masel, UTA and Welz's motion for a stay is denied.

SO ORDERED.